600 So.2d 863 (1992)
In re Louis Edward BILLEAUD, Applying for Adoption.
AppellantCarlos M. Oglesby.
AppelleesAll Other Parties.
No. 90-1298.
Court of Appeal of Louisiana, Third Circuit.
May 20, 1992.
*864 Nancy Dunnings, Lafayette, for appellant, Oglesby.
Charles Hutchens, Lafayette, for Billeauds.
Judy Mastro, Regional Administrator, Lafayette, for appellees.
Before YELVERTON and KNOLL, JJ., and MARCANTEL,[*] J. Pro Tem.
KNOLL, Judge.
This suspensive appeal involves the adoption of a stepchild by a stepparent pursuant to former LSA-R.S. 9:422.1. From the trial court's granting the petition for adoption, the natural father appeals.

FACTS
In September of 1980, Carlos M. Oglesby (Carlos) married Carolyn Schexnayder (Carolyn) in Lake Charles. Approximately two years later on December 13, 1982, Jeff[1] was born. Following a move to Dallas, the couple began experiencing marital problems. Carolyn left the family home in February of 1988 and moved into the home of Louis Billeaud (Louis), a fellow employee, and his wife. The Billeaud home was located in Dallas. Approximately two weeks later, Carolyn moved to an apartment. Jeff remained with Carlos because of an illness, but two weeks later moved to his mother's apartment.
In September of 1988, Carlos and Carolyn obtained a judgment of divorce in Dallas County, Texas. Carolyn was awarded primary custody of Jeff subject to specific visitation privileges in favor of Carlos.[2] Carlos was ordered to pay monthly child support in the amount of $250 commencing November 1988.
Immediately following the September 1988 judgment of divorce, Louis left his family home and moved in with Carolyn and Jeff in her Dallas apartment. From there they moved to Corpus Christi. Later they moved to Lafayette because of employment opportunities. On September 1, 1989, Carolyn and Louis were married in Lafayette, which was approximately five months after Louis obtained a divorce from his first wife.
On January 26, 1990, Louis filed a petition to adopt Jeff, his stepchild, under the provisions of former LSA-R.S. 9:422.1. Louis alleged that the consent of Carlos, Jeff's natural father, was not required because of his continued failure to pay monthly child support to Carolyn as mandated by the Texas divorce decree and that the adoption was in the best interest of Jeff.
Carlos objected to the adoption proceeding admitting his nonsupport in excess of *865 one year, but alleging that the termination of his parental rights would not be in the best interest of Jeff.
After hearing the evidence, the trial court granted the petition for adoption with written reasons, which we setforth herein in pertinent part:
"Under LSA-R.S. [sic] 422.1, if the spouse of the petitioner is the legitimate parent of the child, then the consent of the other legitimate parent is not necessary when the spouse of petitioner has been granted custody or joint custody and the other legitimate parent has refused or failed to comply with a court order of support for a period of one year. The Court is aware of the serious parental rights at stake, however, if those are the circumstances [sic], they would negate the necessity of obtaining consent for an adoption. If the Court makes the determination that the consent of the natural parent is unnecessary, the next determination would be the best interest of the child. Adoption of Dore', 469 So.2d 491 (La.App. 3d Cir.1985); Adoption of Latiolais, 384 So.2d 377 (La. 1980); Wyatt v. Department of Public Welfare, 442 So.2d 1369 (La.App. 3d Cir. 1983); and Adoption of Edwards, 369 So.2d 210 (La.App. 3d Cir.1979). The Court need not consider the best interest of the parent, but rather, what is primarily best for the child concerned.
This Court finds that Mr. Oglesby has failed or refused to pay court ordered child support for a period in excess of one year.
The next issue to be addressed by this Court is whether or not the adoption is in the best interest of [Jeff]. The Court must consider his physical health, his psychological well-being and his general welfare in determining whether the situation would provide him the dignity of an individual human being in our society. In Re J.M.P., 528 So.2d 1002 (La.1988).
Although there is no `custody' dispute as such because [Jeff] is and has been living with his mother and stepfather, there remains the determination of it being in [Jeff's] best interest to maintain his legal status as is or to expend that legal status by allowing him to be adopted by his stepfather.
Would, therefore, Louis Edward Billeaud, Jr. be fit to serve as [Jeff's] parent? Can he fulfill [Jeff's] physical needs? Can he and does he fulfill [Jeff's] need as a parent psychologically? Do these considerations outweigh the existent biological relationship?
The testimony of Mr. and Mrs. Billeaud indicate that [Jeff] needs to feel he has a father there all the time. They consider that to be in his best interest. The boy is in good physical health and participates in sports and enjoys fishing and camping with Mr. Billeaud. Mr. Billeaud participates in most of the sports. He also seems concerned as to [Jeff's] further education and disciplines [Jeff]. Mr. and Mrs. Billeaud are rearing [Jeff] in the Catholic faith. He is Credit Manager at Hamilton Medical Group, a position for which he moved back to Lafayette. He has brothers and sisters and maintains a relationship with them as well as his parent. He has involved [Jeff] with his own family. [Jeff] considers them his own. Mr. Billeaud's sister indicated that [Jeff] was a good influence on her children and plays with them often.
The Court feels that Mr. Billeaud would be a proper and fit parent. Mr. Billeaud and [Jeff] are already functioning as father and son.
It is the opinion of this Court that the adoption of [Jeff] be granted in favor of Louis Edward Billeaud, Jr. for the reasons above and because this Court considers it to be in the best interest of this child."
Carlos suspensively appeals the adoption contending the trial court erred in: 1) basing its decision to grant the adoption on the "parental fitness" of Louis; 2) relying on In re J.M.P., 528 So.2d 1002 (La.1988); and alternatively, 3) concluding that the adoption is in the best interest of Jeff.
From the outset, we reject appellant's contention that the trial court erroneously applied a parental fitness test of Louis as the sole basis for the adoption. In its *866 reasons for judgment, the trial court correctly phrased the adoption issue in terms of the best interest of Jeff. The trial court's emphasis on the relationship between Louis and Jeff was one factor among many in its decision to allow the adoption.
Regarding appellant's second contention, we conclude that the trial court's reliance on In re J.M.P., supra, was proper. Although the circumstances in the cited case involved a voluntary surrender and private adoption, the best interest of the child standard is paramount in all adoptions, whether an intrafamily adoption as in the case sub judice or a private adoption as in In re J.M.P. Former LSA-R.S. 9:432(B). Thus, the only issue left for us to examine is whether this intrafamily adoption is in the best interest of Jeff.

INTRAFAMILY ADOPTION
LSA-R.S. 9:422.1, in effect at the time of the adoption, provided in pertinent part:
"If the spouse of the petitioner is the legitimate parent of the child or if the petitioner is the grandparent or grandparents of the child, then the consent of the other legitimate parent is not necessary when the spouse of the petitioner has been granted either sole or joint custody, or when the grandparent or grandparents, or the mother or the father has been granted sole custody of the child by a court of competent jurisdiction, and if any one of the following conditions exist:
(1) The other legitimate parent has refused or failed to comply with a court order of support for a period of one year.
(2) The other legitimate parent is a nonresident of this state and has failed to support the child for a period of one year after judgment awarding custody to the mother or father or grandparent or grandparents.
(3) The other legitimate parent has refused or failed to visit, communicate, or attempt to communicate with the child without just cause for a period of two years."
Thus, a natural parent may forfeit his "consent status" either by nonsupport or by a failure to visit or communicate with the child.
Once nonpayment of child support is established by the stepparent, the natural parent must demonstrate that he or she had just cause not to pay or that the failure to pay resulted from circumstances beyond his or her control. In re Ackenhausen, 244 La. 730, 154 So.2d 380, 383 (1963).
In the present case, Carlos does not contest the trial court's finding of nonsupport and his waiver of consent pursuant to LSA-R.S. 9:422.1. He contends the adoption is not in Jeff's best interest.
Therefore, we must next determine whether the adoption, in light of all of the circumstances, is in the best interest of Jeff. Former LSA-R.S. 9:432(B). This issue is separate and apart from the consent question and addresses the propriety of the adoption itself. Adoption of Latiolais, 376 So.2d 555, 559 (La.App. 3rd Cir.1979), affirmed, 384 So.2d 377 (La.1980).
Whether an adoption is in the best interest of the child must be decided on the facts of each individual case and the trial court is vested with great discretion in making that determination. In re Adoption of JSB, 505 So.2d 796 (La.App. 2nd Cir.1987), writ denied, 508 So.2d 819 (La. 1987).
Our analysis involves a dual focus on the quality and nature of the relationships between the child and the non-custodial natural parent and between the child and the petitioner/stepparent. This query includes examining the depth and closeness of the child's ties with the non-custodial natural parent and the effect which the loss of this relationship would have on the child as well as examining the love and home environment provided by the petitioner/stepparent. Adoption of Latiolais, supra; In re Glass Applying for Adoption, 424 So.2d 383, 388 (La.App. 2nd Cir.1982); In re Hinton, 390 So.2d 972, 976 (La.App. 2nd Cir. 1980), writ denied, 396 So.2d 1350 (La. 1981).
Louisiana courts have historically been reluctant to sever the parent-child relationship *867 and derogate from the natural rights inherent therein since the jurisprudence recognizes the fundamental belief that a child has a right to know and love his parents and such rights should not be denied except when the parent has proven himself unworthy of this love. Knapp v. Adoption of Cotten, 577 So.2d 241 (La. App. 1st Cir.1991), writ denied, 580 So.2d 364 (La.1991), and cases cited therein.
In the case sub judice, the record evidence preponderates that Carlos and Jeff lack a meaningful and close relationship. Carolyn described the father-son relationship as abnormal and as "no big relationship" since Carlos never participated in any of the traditional father-son activities and paid little attention to Jeff. She alluded to Carlos' failure to make any of the $250 monthly child support payments beyond December 1988 and his failure to visit or communicate with Jeff for long periods of time as evidence of his indifference toward his father-son relationship.
Indeed, the record contains uncontradicted evidence that Carlos did not exercise his visitation privileges with Jeff in 1989 on Memorial Day, on Father's Day, during the summer or during the Christmas holiday. Additionally, the record evidence shows that between December 1988 through January 1990, telephone conversations were few and far between with Carlos speaking with Jeff only approximately seven minutes. This lack of visitation or communication pales in comparison to Carlos' repeated and consistent visits with his first son from a previous marriage, including Easter vacation in 1989, summer vacation 1989 and Christmas of 1989 and approximately 10 hours of telephone calls to his first wife and first son during that same time period.
At trial, Carlos admitted that he had a better relationship with his first son than with Jeff. He explained that his lack of visitation or communication was due to a lack of finances and the visitation barriers erected by Carolyn and Louis.
We find these excuses unconvincing since Carlos made several trips from Mesquite, Texas to Denham Springs, Louisiana to visit with his first son, but failed to telephone or alter his driving route to visit Jeff in Lafayette. Moreover, Carlos acknowledged that he used his parents' telephone in making all of his long distance telephone calls generally at their expense and has never petitioned a court for a reduction in child support payments commensurate with his reduced income. Lastly, Carlos' allegation of visitation barriers is unsupported by the record.
An examination of the relationship between Louis and Jeff demonstrates that the two have a close and loving relationship. Their relationship has bonded through many traditional father-son activities including sports, outdoor activities and regular church attendance. Louis described his relationship with Jeff as extremely close and Carolyn testified that Jeff, at his own request, is now using Louis' surname at school.
Considering all of the circumstances including Carlos' nonsupport, consistent lack of visitation or communication with Jeff, and Louis' close and loving relationship with Jeff, we cannot say that the trial court committed manifest error in granting the adoption petition.
For the foregoing reasons, the judgment of the trial court is affirmed at appellant's costs.
AFFIRMED.
NOTES
[*] Judge Bernard N. Marcantel, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] In this opinion, we will refer to the adopted child by a pseudonym of Jeff.
[2] Carlos was granted visitation rights as follows:

The first and third weekends of each month; the first half of Christmas vacation in even numbered years and the second half of Christmas vacation in odd numbered years; Memorial Day, Labor Day and Thanksgiving in odd numbered years; Spring school vacation or Easter vacation in even numbered years, Father's Day and upon timely request, four weeks each summer.