643 So.2d 1251 (1994)
In re C.B., APPLYING FOR ADOPTION.
No. 94-C-0755.
Supreme Court of Louisiana.
October 17, 1994.
*1252 Terry W. Sercovich, Belle Chasse, for applicant.
Thomas J. Frierson, Baker, for respondent.
WILLIAM NORRIS, III, Justice Pro Tem.[1]
We granted certiorari to consider the proper application of La.Ch.C. art. 1255 B in an intrafamily (stepparent) adoption. The trial court granted the adoption, finding that the petitioning stepfather established the facts necessary to dispense with the biological father's consent, and that the natural father failed to rebut the best interests presumption favoring adoption. The court of appeal affirmed, holding that the trial court did not abuse its discretion in deciding that the natural father failed to overcome the presumption. Based on the text, purpose and history of the adoption law, we conclude that the presumption in article 1255 B does not apply against a natural parent who was granted joint custody of the children by court decree. Accordingly, we vacate the adoption decree and remand for a new best interests hearing.

Factual and Procedural History
In December of 1989, the trial court rendered judgment in favor of TH granting him a divorce from his wife, TR. The court awarded them joint legal custody of their three minor children, ages 8, 5 and 3 (at the time of the adoption hearing), with the mother as principal physical custodian, subject to a plan of implementation for sharing custody. The court ordered TH to pay child support of $300 a month. It is undisputed that he failed to maintain his child support obligation and, in fact, paid only a total of $100 in the year immediately preceding the filing of the adoption petition. This amount was confirmed at trial by a representative of the Department of Social Services (DSS), designated as payee in May 1991. In June 1991, TH filed a rule to reduce or suspend child support due to a reduction in his worker's compensation benefits.[2] Because of a procedural oversight, the court never rendered a judgment on the rule. Both TH and TR subsequently remarried, and on July 15, 1992 CB, TR's new husband, with her consent, filed a petition to legally adopt his three stepchildren.
The trial court granted the adoption over TH's objections. In written reasons for *1253 judgment, the court first concluded that CB proved by a preponderance of the evidence that TH failed or refused to comply with the court order of support for one year. It deemed TH's two $50 payments insignificant and his consent to the adoption unnecessary under La.Ch.C. art. 1245 D(1).[3]
Next, the court considered whether the adoption would serve the children's best interests. Applying La.Ch.C. art. 1255 B's rebuttable presumption favoring adoption when the spouse of the petitioner stepparent has been granted custody of the children, the court concluded that the biological father, TH, presented insufficient evidence to rebut it. The court at the outset noted that TH exercised regular, periodic sharing of custody, but never mentioned this or TH's testimony concerning his close relationship with his children, in deciding the best interest issue. The court found the expert testimony of Reverend Mark Crosby, a family and marriage counselor who counseled the oldest boy and believed that adoption would not be in his best interests, "unquestionably genuine and honest," but doubted the perceptions of an eight-year-old. It also questioned the reliability of the information that Reverend Crosby may have obtained from discussions with TH and his new wife. Finally, although CB had been reported to the DSS several times for physically abusing his oldest stepson, the court felt the matters were "satisfactorily terminated," and that he had changed his parenting techniques. For these reasons, the trial court concluded that the adoption would be in the children's best interests. TH appealed, urging that the trial court abused its discretion in finding the adoption in the children's best interests.
A divided panel of the Louisiana Fourth Circuit Court of Appeal affirmed in an unpublished opinion, 93-1985 (La.App. 4th Cir. 2/25/94), 633 So.2d 975, holding that the trial court did not abuse its discretion. It discounted TH's testimony that he faithfully exercised custody of his children every other weekend and during the summer, stating "the trial court noted that TH exercised regular, periodic visitation, but found that TH's protestations of his love and concern for the child [sic] were insincere in the light of his steadfast refusal to support his children even when he had $27,000 in cash available for this purpose." Consequently, the court of appeal affirmed the trial court's finding that TH did not rebut the best interests presumption. From that judgment, TH sought writs from this court.

Law and Analysis
Children's Code article 1255 B creates a rebuttable presumption that the adoption is in the child's best interests if a court has granted custody to either the child's grandparents or the child's parent married to the stepparent petitioner. It effectively imposes the burden on the natural parent opposing the adoption to prove that the adoption is not in the child's best interest. The scope of art. 1255 B, however, is problematic. "Custody" is susceptible of different meanings; it may be either joint or sole. La.C.C. art. 132. Thus, 1255 B may be read broadly to allow the presumption when a court has awarded custody of the child to the spouse of the petitioning stepparent or grandparents and the natural parent opposing the adoption jointly. It may also be read narrowly to apply only when a court has awarded sole custody to the spouse of the petitioning stepparent or grandparents. In this respect, the law is ambiguous.
When a law is clear and unambiguous and its application does not lead to absurd *1254 consequences, the law shall be applied as written without further interpretation in search of the intent of the legislature. La. C.C. art. 9; Hutchinson v. Patel, 93-2156 (La. 5/23/94), 637 So.2d 415. However, when the language of the law is ambiguous or susceptible of two reasonable interpretations, it must be interpreted as having the meaning that best conforms to the purpose of the law. La.C.C. art. 10; Hutchinson, 93-2156, 637 So.2d at 420; Touchard v. Williams, 617 So.2d 885, 888 (La.1993). The meaning is sought by examining the context in which the words occur and the text of the law as a whole. La.C.C. art. 12.
Historically, Louisiana's courts have held that adoption statutes are in derogation of the natural rights of the biological parent to his or her child and must be strictly construed in favor of the biological parents. In re Ackenhausen, 244 La. 730, 154 So.2d 380 (1963); Roy v. Speer, 249 La. 1034,192 So.2d 554 (1966); Wyatt v. Department of Public Welfare, 442 So.2d 1369, 1372 (La.App. 3d Cir.1983); Nelson v. Burkeen Constr. Co., 605 So.2d 681, 685 (La.App. 2d Cir.1992). Hence, if any ambiguity remains after the rules of statutory construction are applied, we then apply the rule of strict construction. See Hutchinson, supra at 421; Touchard, supra at 892.
The legislative history of Ch.C. art. 1255 B is instructive. This particular provision can be traced back to former La.R.S. 9:422.1, specifically section B; however, an analysis of § 422.1 in its entirety is helpful to fully understand the meaning of "custody" in the best interests context.
Former R.S. 9:422.1 listed conditions that rendered the natural parent's consent to the adoption unnecessary. As originally enacted in 1958 this section read:
If the spouse of the petitioner is the legitimate parent of the child, then the consent of the other legitimate parent is not necessary if the following conditions exist:
1. The spouse of the petitioner has been granted custody of the child by a court of competent jurisdiction; and
2. The other parent has refused or failed to comply with a court order of support for a period of three years or more.
Acts 1958, No. 501, § 1.
At the time, Louisiana did not recognize joint or split custody. Former La.C.C. art. 157; Johnson v. Johnson, 214 La. 912, 39 So.2d 340 (1949). In 1981, joint custody was introduced into Louisiana law, followed shortly by a rebuttable presumption that it was in the child's best interest.[4] See Notes, Louisiana's New Joint Custody Law, 43 La.L.Rev. 759 (1983). In 1987, obviously prompted by the establishment of joint custody, the legislature amended the term "custody" in § 422.1. By Acts 1987, No. 719, § 1, the introductory paragraph was changed to read:
If the spouse of the petitioner is the legitimate parent of the child or if the petitioner is the grandparent or grandparents of the child, then the consent of the other legitimate parent is not necessary when the spouse of the petitioner has been granted either sole or joint custody, or when the grandparent or grandparents, or the mother or the father has been granted sole custody of the child by a court of competent jurisdiction, and if any one of the following conditions exist:
(emphasis added)
In 1990, the legislature added part B to § 422.1, providing:
When the grandparent or grandparents of a child who has been decreed as abandoned under R.S. 9:403 have been granted custody of the child, the grandparent or grandparents may file a petition for adoption of the child and there shall be a rebuttable presumption that adoption by the grandparent or grandparents is in the best interests of the child.
Added by Acts 1990, No. 825, § 1.
"Custody" in this context referred only to sole custody. La.C.C. art. 131, as it read in 1990, did not provide for joint custody between grandparents and parents.[5] Also, a *1255 clear expression of the legislature's intent with respect to the grandparents is found in § 422.1's consent provision which applied only if the grandparents were granted sole custody.
In 1991, the Children's Code was adopted; 422.1 A, the consent provision, and B, the best interests provision, were transferred to Ch.C. art. 1245 and 1255 B respectively.[6] Ch.C. art. 1245, subpart C, specifically retained the language "sole or joint" custody that had been added to 9:422.1's introductory paragraph.
Children's Code article 1255 B, the best interests provision, deleted reference to abandonment and expanded the scope of former § 422.1 B to include the stepparent:
When a court has granted custody to either the child's grandparents or his parent married to the stepparent petitioner, there shall be a rebuttable presumption that this adoption is in the best interests of the child.
Acts 1991 No. 235 § 12, effective January 1, 1992.
The legislature at this time was obviously aware of the existence of and preference for joint custody, as it had previously amended § 9:422.1 A to reflect "sole or joint" custody and retained that language in Ch.C. art. 1245, the consent provision; despite this knowledge, however, it did not insert language in 1255 B indicating an intent to expand the term's original meaning to include joint custody. Had the legislature intended "custody" in art. 1255 B to mean sole or joint custody, it would have framed the statute, as it had amended R.S. 9:422.1 A and enacted its successor, Ch.C. art. 1245, to specify this.
The purpose of the best interests presumption is obvious considering the context in which it arose. As originally enacted, the presumption applied only after a court had decreed the child abandoned and granted the petitioning grandparents custody. First, an abandonment decree under former § 403 required a high standard of proof, clear and convincing evidence, that the parents of the child intended to avoid parental responsibility. Former La.R.S. 9:403 A(1)(a), (b). Second, for the reasons already expressed, after the child was decreed abandoned, the grandparents had been awarded sole custody. In this instance, best interest was presumed and the burden shifted to the natural parents who had abandoned the child and lost the right to custody to disprove that adoption was in the child's best interest. Under these circumstances granting a presumption is reasonable; there had already been an adjudication by the trial court indicating that it was in the child's best interest to be removed from the natural parents' care entirely and placed in the grandparents' custody. Moreover, it is consistent with the jurisprudential reluctance to sever the ties between a natural parent and child, and to do so only as a last resort, when such action cannot be avoided. Roy v. Speer, supra; In re Glass, 424 So.2d 383 (La.App. 2d Cir.1982).
Similarly, where a court has granted sole custody, there has been an initial adjudication that it is in the best interests of that child to remain in one parent's custody and not the other. In this situation, it is not unreasonable to apply a presumption that adoption by the stepparent of the spouse awarded sole custody would be in the child's best interest. In the past this court has recognized the import of a prior custody decree on a subsequent adoption proceeding. See Roy v. Speer, supra.
The same reasoning does not apply, however, in cases where a court has decreed that the interest of the child would best be served by awarding custody jointly to the mother and father, maintaining close, continuing contact between the child and both parents. *1256 Under these circumstances, there is no justification for presuming that the adoption by a stepparent without custody, as opposed to a parent with joint custody, is in the child's best interest, and in imposing on the natural parent the burden of rebutting this. In fact, such an interpretation defies the jurisprudence constante recognizing the ties between a natural parent and child as "the closest and strongest within the human family," and the extreme reluctance with which courts are willing to sever that bond. Roy v. Speer, supra; also see Adoption of Latiolais, supra; In re Ackenhausen, supra; In re Billeaud, 600 So.2d 863 (La.App. 3d Cir.1992); Knapp v. Adoption of Cotten, supra; In re Glass, supra. For these reasons, we conclude that the legislature simply added the stepparent when it enacted Ch.C. art. 1255 B, but never intended to redefine the term custody; its original meaning, sole custody, has been expressly retained.
This interpretation is supported by the rule of strict construction which favors the natural parents and limits the right to adopt. Roy v. Speer, supra; In re Ackenhausen, supra. We believe this construction is the most reasonable, in light of the legislative history of the entire enactment and purpose of the rebuttable presumption in the context of adoption proceedings.
Because a court had awarded TH and TR joint custody prior to this adoption proceeding, Ch.C. art. 1255 B's presumption did not apply. Accordingly, the trial court erred in applying it, and the judgment must be reversed. Often, in cases where a legal error necessitates a reversal, the appellate court in the interest of judicial economy will decide the case by de novo review of the facts on record. See, e.g., Gonzales v. Xerox Corp., 320 So.2d 163, 165 (La.1975). However, such a procedure is appropriate only "when an appellate court has all the facts before it." Id., and citations therein. Our review of this record convinces us that such is not the case here.
It is apparent that the petitioning stepparent, CB, believed he had the benefit of the art. 1255 B presumption, and that he needed only to lay a foundation to activate it. His testimony consists of a scant two pages in which he testified that he was married to the children's mother, that she had joint custody of the children, that TH had failed to pay child support, and that he (CB) desired to adopt the children. TR's testimony merely corroborated this information. CB offered no evidence as to the best interests of the children. TH's testimony was somewhat more expansive, as he briefly described his relationship with the children and stated that he opposed the adoption. However, his expert witness, Reverend Crosby, testified only as to interviews with the oldest of the three children; he had no first-hand information with respect to the other two. The only other evidence introduced was a Department of Social Services report which counseled neither for nor against the adoption. In short, because of the trial court's mistaken belief that the art. 1255 B presumption applied to this case, CB likely withheld evidence pertinent to the children's best interest, and TH probably could have made a better showing as well.
The paramount consideration in an adoption proceeding is the best interests of the children. La.Ch.C. art. 1255 A. A parent's failure to pay support may render consent to adopt unnecessary under art. 1245, but does not prove that severing ties with that parent is in the child's best interests. See Adoption of Latiolais, supra; In re Farrar, 93-1347 (La.App. 3d Cir. 4/6/94), 635 So.2d 674; In re EWB, 441 So.2d 478 (La.App. 2d Cir.1983); In re H, 437 So.2d 895 (La.App. 2d Cir.1983); and In re Glass, supra. The parties here, operating under a mistake of law, introduced insufficient evidence for us to properly consider (1) the respective fitness of the noncustodial natural parent and the petitioning stepparent; (2) the children's psychological ties to each; and (3) the natural parent's biological tie to the children. In re JMP, 528 So.2d 1002, 1013 (La.1988); also see In re Billeaud, 600 So.2d at 866. The record contains no evidence of the two younger children's relationship with their stepfather; likewise, there is little evidence pertaining to relations between the younger children and their father and the oldest child's relationship to each parent, natural and adoptive.
*1257 The law admonishes us to render a judgment that is just, legal and proper on the record. La.C.C.P. art. 2164. Justice will be best served here by remanding the case for a new hearing on the best interests of the children, in which the trial court is instructed to apply the proper standard of proof and the parties shall present evidence accordingly. See In re JMP, supra.
For the reasons expressed, we vacate the adoption decree and remand the case to the trial court for further proceedings consistent with this opinion.
ADOPTION DECREE VACATED; REMANDED TO THE TRIAL COURT FOR A NEW BEST INTERESTS HEARING.
NOTES
[1] Judge William Norris, III, Court of Appeal, Second Circuit, sitting by assignment in place of Justice James L. Dennis.

Judge Felicia Toney Williams, Court of Appeal, Second Circuit, participating as Associate Justice Pro Tempore, effective September 1, 1994, not on panel. Rule IV, Part 2, § 3.
[2] TH was injured on the job in July of 1989. He initially received disability benefits of $800 a month, but testified that these were reduced to $425 per month beginning in April of 1991.
[3] The court found that any financial difficulties TH had at the time he filed his motion to reduce or suspend child support payments disappeared in March 1992 when he received a lump sum worker's compensation settlement from his employer's insurer in the amount of $27,214. The court noted that "not one penny" of the settlement went to his children.

TH did not contest the consent issue and conceded in brief to the court of appeal that he did not comply with the court order of child support. Notwithstanding the court's ruling dispensing with TH's consent, the adoption must still be in the children's best interests. Adoption of Latiolais, 384 So.2d 377, 378 (La.1980); Knapp v. Adoption of Cotten, 577 So.2d 241, 246 (La.App. 1st Cir.), writ denied, 580 So.2d 364 (1991); In re RWT, 594 So.2d 1383, 1387 (La.App. 2d Cir. 1992). Accordingly, we deem it unnecessary to discuss the correctness of the determination dispensing with the natural father's consent to adopt.
[4] See Acts 1981, No. 283, § 1 and Acts 1983, No. 695, § 1.
[5] In order to award custody to a nonparent under former C.C. art. 131, the court would first have had to find an award to a parent to be detrimental to the child. We are cognizant of one case which affirmed the trial court award of shared custody between a grandparent and a parent; however the validity of such an arrangement was not an issue on appeal. Schloegel v. Schloegel, 584 So.2d 344 (La.App. 4th Cir.1991); compare Merritt v. Merritt, 550 So.2d 882 (La. App. 2d Cir.1989).
[6] Provisions A and B in former 9:422.1 are now separate and distinct provisions in the Children's Code. This is consistent with the jurisprudence holding that the two tests, dispensing with consent and best interest, are mutually exclusive. Adoption of Latiolais, supra; In re RWT, supra; Knapp v. Adoption of Cotten, supra; In re Kuchler, 513 So.2d 374 (La.App. 4th Cir.1987); In re Glass, 424 So.2d 383 (La.App. 2d Cir.1982).