EZELL, Judge,
dissenting.
| Nor the following reasons, I respectfully dissent. This matter began as a child in need of care case by petition filed by the State on October 6, 2011. On October 27, the trial court placed the child in the temporary custody of the Department of Child and Family Services (DCFS). On December 12, 2011, the paternal grandparent, S.R., filed for custody of P.T. On January 11, 2012, the maternal grandparents R.T. and G.T. filed to intervene and for custody of P.T., therein asking for sole care, custody, and control of P.T.
At a dispositional hearing on February 29, 2012, P.T. was placed with R.T. and G.T., with S.R. being given alternating Tuesdays from 9:00 a.m. to Sunday at 5:00 p.m. All efforts toward reunification with the parents of P.T. failed!
At the case review hearing on February 19, 2013, the goal set by the State was that adoption was in the best interest of the child. On March 28, 2013, the parental rights of the parents of P.T. were terminated. The trial court, on May 28, 2013, determined that it was not in the best interest of the child to be adopted and rendered judgment that the paternal and maternal grandparents would share the custody of P.T. All the grandparents were joined or placed at issue the custody and/or adoption of P.T. in pleadings before the trial court.
On August 22, 2013, in a court report by the CASA representative for the court, it was recommended that P.T. be adopted by R.T. and G.T., due to the fact that both parties were in agreement that the paternal grandparent, S.R., would have visitation every other weekend-. However, when the parties came before the trial |2court, they had not reached an agreement. Even though there was no agreement, the CASA worker again recommended adoption by R.T. and G.T. This occurred on November 5, 2013. On November 12, 2013, a bench trial was held and the court denied the adoption and granted co-domiciliary custody to R.T. and G.T., maternal grandparents, and to S.R., paternal grandparent.
All of the agency reports and CASA reports indicate that the maternal grandparents, R.T. and G.T., have provided the child with all of her needs and the child is comfortable in their home. P.T. was originally place with the maternal grandparents on March 1, 2012. The CASA report of September 2013 clearly shows that the grandparents, before lawyers became involved in the court proceedings as representatives of both of the grandparents, were agreeable to having the child adopted by the maternal grandparents, as long as S.R. got the child every other weekend and shared holidays with the maternal grandparents.
On September 5, 2013, the trial court ordered that counsel for the parties make a proposal to the maternal grandparents as to custody of P.T. The CASA designee, Marie Jones, on November 5, 2013, filed her report and again recommended adoption by R.T. and G.T.
The trial court, on November 12, 2013, after a trial, denied the adoption and awarded joint custody of P.T. and granted co-domiciliary custody of the child, P.T. to both sides and terminated the jurisdiction of DCFS and incorporated a joint custody plan on June 19, 2014. This judgment was read and signed on August 18, 2014. It is *1194 clear from the comments made by the trial court that the court was under the mistaken impression that if the parties could and would agree to a visitation agreement under a “Continuing Contact Agreement,” which is permissible as per La.Ch.Code art. 1218(D), and more specifically under La.Ch.Code3 art. 1269.1, that the trial court would not be able to alter the judgment of adoption in the future.
We must remember that one of the purposes for termination of the parents’ rights is to make the child available for adoption. The trial court, by not allowing for adoption, in reality makes the child an orphan or a child without a parent or parents. La.Ch.Code art. 1037.1. It is clear that the preference is given to adoption in these cases. La.Ch.Code art. 702(C). The reasoning by the trial court was, “If I do custody agreement and I find that one party is not cooperating then I can change the custody agreement,.... and give more authority to one party than the other.... versus an adoption, I’m stuck.” This I feel is legal error! The decision in this case by the trial court will not resolve the differences between the parties, but.engender and require litigation in the future to resolve differences. In a Continuing Contact Agreement, the court can require mediation between the parties to resolve any differences. See La.Ch.Code art. 1269.8(B).
It is clear that S.R. did not present sufficient evidence to controvert the presumption that adoption of P.T. was in her best interest. In re C.B., Applying for Adoption, 94-755 (La.10/17/94), 643 So.2d 1251. The only evidence presented by S.R. was with regard to her visitation/access. S.R. was concerned as to what was in her best interest and presented that evidence at trial.
It is clear that pursuant to La.R.S. 9:335(B)(1), unless “an implementation order to the contrary or for other good cause shown,” there shall be a designated domiciliary parent, not co-domiciliary parents.
If the trial court denied the adoption in this matter, the State’s involvement is not terminated. I find that termination of the involvement of the DCFS is a legal error.
|4Every child needs stability, and in this case, that stability would call for the adoption of the child, P.T., by her maternal grandparents and a “Continuing Contacts Agreement” with the paternal grandparent.