|,DECUIR, Judge.
This is an appeal of the termination of parental rights. BJL appeals the termination of her parental rights as to three of her children, ADH, CAH, and HL.[1] LDH appeals the termination of his parental rights as to ADH and CAH. After careful consideration of the record and the arguments propounded by the parties, we affirm the termination of the mother’s parental rights and reverse the termination of the father’s rights.
In March of 1998, the State of Louisiana, through the Department of Social Services, removed from the home of their mother five children, namely, ADH, CAH, HL, AL, and MB. The grounds for removal were lack of supervision and passive abuse. The younger children had been left in the care of MB, an incorrigible and unstable teenager, and there was evidence of a recent fire in the home and injuries to some of the children. Prior to the filing of these termination proceedings, MB reached the age of majority and AL was placed in the custody of her father and stepmother.
BJL is an uneducated, unskilled woman in her mid-thirties. She was evaluated by a psychologist at the initiation of these proceedings and was found to be of subav-erage intelligence. She was diagnosed with personality and anger impulse control disorders. BJL is able to manage her own affairs. In the first year of foster care, she was consistently available for visits with her children in her home; however, she then moved to California without notifying the Department. She has no income and was recently rejected for social security benefits. She also has been unable to maintain housing. Both the psychologist and the trial judge referred to the fact that, prior to the removal of the children, BJL often left the younger ones in the care of MB |gand believed him to be a capable caregiver, even though they considered him far from able to care for other children. Additionally, BJL has made no *857 attempt to obtain mental health treatment or other assistance offered to her throughout the course of these proceedings.
BJL did not appear at the termination hearing. At the time the petition for termination was filed, BJL was believed to be an absentee living at an unknown address in California. Accordingly, a curator ad hoc was properly appointed to locate and represent her and was served in accordance with La.Ch.Code art. 1023. By the time of the hearing, the curator had been in contact with BJL, and she was apparently back in Louisiana. At the start of the termination hearing, the curator advised the court that BJL was aware of the hearing, but that she was not present. He moved for a continuance which was denied. The trial judge commented that BJL had made no contact with the court or counsel to advise that she could not appear at the hearing. In this appeal, counsel for BJL complains that she was not personally served with the termination petition and that the trial judge erred in refusing to grant a continuance. We find no merit to these arguments as service was made according to law and there was no abuse of discretion in the denial of a continuance.
LDH, the father of the twin boys ADH and CAH, divorced BJL about a year after his children were born in 1991. At the termination hearing, he testified that he wants to raise the boys in his home and has sought custody of them three times since his divorce from BJL. He also asserted that the, boys want to live with him, although they did not testify at the hearing. LDH moved out of town after his divorce and, in 1998, he took a job in the oil industry in Nigeria, working two six-month periods there in 1998 and 1999. In the latter part of 1999, LDH came forward to exercise visitation with his sons and begin compliance with the case plan devised by the ^Department of Social Services to reunite the family. LDH is not without problems. In the absence of a court order to do so, he has not provided financial support for the boys. He has two DWI convictions from 1998 and was delinquent in providing income verification and a substance abuse evaluation to the Department.
LDH testified that he works offshore as a cook, working fourteen days on and fourteen days off. He lives with a woman, MJ, who has three children of her own. The trial judge was very concerned that MJ could be a potential caregiver for the boys. Her own children have been removed from her home. She has been diagnosed as mildly mentally retarded and is unable to manage her own affairs. LDH testified that he would be willing to break off the relationship with MJ if that is what it would take to gain custody of the boys.
The trial judge found that BJL has made no significant progress in “putting herself in a position to receive” the children back into her life. Although she has “gone through the motions,” as far as attending family conferences and most visitations, she has not taken advantage of the services offered to her. Noting that BJL was not even present for the termination hearing, the trial judge concluded that BJL has a serious problem in caring for her children because of her low threshold for frustration. Additionally, her insistence on leaving the younger children in the care of MB shows an extreme lack of good judgment.
In terminating the parental rights of LDH, the trial judge voiced two serious concerns with LDH’s ability to be a parent. She first took issue with LDH’s denial of a substance abuse problem, noting the two DWI convictions and a recommendation for substance abuse counseling from the evaluating psychologist. Additionally, *858 the trial judge expressed grave concern over the three year relationship between LDH and MJ, believing that MJ’s inadequacies as a caregiver should have |4been obvious to LDH. She commented to him, “I feel sorry for you, Mr. [H], I think you’d like to have an attempt to raise those two children, but it’s not a matter of what you wish to do, it’s what you will do. And what have you done?”
There was evidence in the record that the foster parents of the boys have requested them removal. There was no evidence from the Department as to any long term plans for the boys. In fact, the trial judge commented that perhaps the boys would get “nothing more than some type of long term facility,” essentially recognizing that the boys are unadoptable. She also surmised that if LDH were serious about getting custody of his sons he could apply to adopt them.
Louisiana law holds the institution of the family in very high regard. The preamble to our Children’s Code, which governs termination of parental rights proceedings, contains the following pronouncements:
Art. 101. Preamble
The people of Louisiana recognize the family as the most fundamental unit of human society; that preserving families is essential to a free society; that the relationship between parent and child is preeminent in establishing and maintaining the well-being of the child; that parents have the responsibility for providing the basic necessities of life as well as love and affection to their children; that parents have the paramount right to raise their children in accordance with their own values and traditions; that parents should make the decisions regarding where and with whom the child shall reside, the educational, moral, ethical, and religious training of the child, the medical, psychiatric, surgical, and preventive health care of the child, and the discipline of the child; that children owe to their parents respect, obedience, and affection; that the role of the state in the family is limited and should only be asserted when there is a serious threat to the family, the parents, or the child; and that extraordinary procedures established by law are meant to be used only when required by necessity and then with due respect for the rights of the parents, the children, and the institution of the family.
This court has previously recognized the fundamental concept that a child has the right to know and love his parents. In re Billeaud, 600 So.2d 863 (La.App. 3 Cir.1992). The natural rights between parents and their children are reciprocal and should not be denied except when a parent has proven himself unworthy of his child’s love. In re Adoption of B.G.S., 556 So.2d 545 (La.1990); In re Elliott, 93-750 (La.App. 3 Cir. 12/8/93), 630 So.2d 281, writ denied, 94-0076 (La.3/11/94), 634 So.2d 396. Parental rights give rise to a fundamental liberty interest and warrant great deference and vigilant protection under the law. State in the Interest of Q.P., 94-609 (La.App. 3 Cir. 11/2/94), 649 So.2d 512. Furthermore, because termination of parental rights is in derogation of the natural and fundamental liberties of the parent, proof of the grounds for termination must be proven by at least clear and convincing evidence. Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); La.Ch.Code art. 1035. Thus, the termination of parental rights is a severe action which requires an onerous burden of proof. State in the Interest of J.M.L., 540 So.2d 1244 (La.App. 3 Cir.1989).
Additionally, when faced with the decision to terminate a person’s parental rights, the trial judge must consider the *859 best interest of the child and determine whether that interest will be served by termination:
Title X of the Children’s Code, which became effective on January 1, 1992, governs the involuntary termination of parental rights. La.Child.Code art. 1015 sets forth ten grounds on which a court can terminate parental rights. Only one ground need be established, La.Child.Code art. 1015, but the judge must also find that the termination is in the best interest of the child. La. Child. Code art. 1039.
State in Interest of ML, 95-0045, p. 4 (La.9/5/1995), 660 So.2d 830, 832. In reviewing the determination of the trial court, the appellate court exercises the manifest error or clearly wrong standard of review. State in the Interest of S.M.W., 00-3277 (La.2/21/01), 781 So.2d 1223; In re A.J.F., 00-0948 (La.6/30/00), 764 So.2d 47.
IfiAfter careful review of the record, we find no error in the trial court’s decision to terminate the parental rights of BJL. The Department proved the grounds for termination under La.Ch.Code art. 1015(5) with clear and convincing evidence. More than one year elapsed since the children were removed from BJL’s custody. The Department offered unrefuted evidence that BJL has not substantially complied with the case plan, i.e., she has not obtained stable housing or maintained a consistent income, has not kept the Department advised of her whereabouts, and has not addressed her serious mental health issues. Additionally, BJL visited with her children only once between May of 2000 and the hearing in November of 2000. Finally, the record supports the conclusion that there is no reasonable expectation of significant improvement in BJL’s condition. Although the trial court did not specifically articulate a finding of the best interests of the children, we find this error to be harmless. The evidence in the record indicates that the children’s best interests would be served by the termination of the parental rights of BJL, a woman who has repeatedly failed to provide proper supervision for her children and who failed even to appear and defend herself in these termination proceedings.
We do find, however, manifest error in the trial court’s decision to terminate the rights of LDH. The grounds for termination of his rights were specified in the petition as those listed in La.Ch.Code art. 1015(5), namely, that more than a year has elapsed since the children were removed from the parent’s custody, that the parent has failed to substantially comply with the case plan, and that there is no reasonable expectation of improvement in the parent’s condition or conduct. LDH has never had custody of the twin boys since the first year of their lives. He was out of the country when the boys were removed from their mother’s custody, and there is no evidence that the Department attempted to place the boys with LDH at any time during the |7course of these proceedings. LDH has complied with the requirements of the case plan to a certain extent; it may be necessary for the Department to consider revising certain elements of the plan based on LDH’s work schedule, his promise to end the relationship with MJ if necessary, and his ultimate verification of compliance with substance abuse services. It is this court’s conclusion that LDH has shown a definite possibility of improvement in his condition as evidenced by his consistent visitation with the boys, his sincere desire to gain custody of the boys, and his attempts to fulfill the requirements of the Department.
The trial court failed to find and we, likewise, find nothing in the record to support a conclusion that termination of LDH’s parental rights would be in the best *860 interests of these nine-year-old, essentially unadoptable boys whose foster parents, of three years’ duration, no longer want them. Accordingly, we are compelled to reverse that portion of the judgment terminating the parental rights of LDH.
For the foregoing reasons, the judgment of the trial court is reversed insofar as it terminates the parental rights of LDH. In all other respects, the judgment of the trial court is affirmed. This matter is ' remanded to the trial court for a hearing to determine the appropriate disposition necessary to serve the best interests of ADH and CAH at the present time, with a goal of reuniting ADH and CAH with their father LDH.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

. Pursuant to Rule 5.2, Uniform Rules — • Courts of Appeal, the use of initials will be used to protect the identities of the minor children.