| .DOUCET, Chief Judge.
S.M., the mother, and F.H., the father of the minor children, J.M., J.P.M., and M.L.M., appeal a judgment of the trial court terminating their parental rights and certifying the three minors free for adoption. We affirm in part and reverse in part the judgment of the trial court.
FACTS
The three minors were adjudicated “children in need of care” on August 26, 1997. At that time their physical custody was left with their mother, but under State supervision. Thereafter, on March 23, 1998, the custody of the three minor children was transferred to the State of Louisiana, Department of Social Services, Office of Community Services and the children were placed in a foster home.
The State filed a Petition for Termination of Parental Rights and Certification for Adoption on September 25, 2000. A hearing was held on the State’s petition on December 15, 2000, and on March 16, 2001, the trial court rendered judgment terminating the parental rights of S.M. and F.H. in regard to the minor children J.M., J.P.M., and M.L.M.
On appeal, both parents argue that the State failed to carry its burden of proof.
LAW AND DISCUSSION
In October of last year, in State ex rel LFB, 01-536, pp. 2-4 (La.App. 3 Cir. 10/3/01); 796 So.2d 916; 918-19, this court *804 recounted in detail the law applicable to termination cases:
In State in the Interest of S.M.W., C.D.W., C.N.W., and E.S.W., 00-3277, pp. 12-14, (La.2/21/01), 781 So.2d 1223, 1232-33, our supreme court discussed the law applicable to this case:
| ¡¿Title X of the Children’s Code governs the involuntary termination of parental rights. As applicable to this case, the grounds for termination of parental rights are:
(5) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent’s custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent’s condition or conduct in the near future, considering the child’s age and his need for a safe, stable, and permanent home.
La. Children’s Code Art. 1015(5). The method of proving these elements is provided in La. Children’s Code Art. 1036. La. Children’s Code Art. 1036(C) and (D) provide:
C) Under Article 1015(5), lack of parental compliance with a case plan may be evidenced by one or more of the following:
(1) The parent’s failure to attend court-approved scheduled visitations with the child.
(2) The parent’s failure to communicate with the child.
(3) The parent’s failure to keep the department apprised of the parent’s whereabouts and significant changes affecting the parent’s ability to comply with the case plan for services.
(4) The parent’s failure to contribute to the costs of the child’s foster care, if ordered to do so by the court when approving the case plan.
(5) The parent’s repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.
(6) The parent’s lack of substantial improvement in redressing the problems preventing reunification.
|S(D) Under Article 1015(5), lack of any reasonable expectation of significant improvement in the parent’s conduct in the near future may be evidenced by one or more of the following:
(1) Any physical or mental illness, mental deficiency, substance abuse, or chemical dependency that renders the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm, based upon expert opinion or based upon an established pattern of behavior.
(2) A pattern of repeated incarceration of the parent that has rendered the parent unable to care for the immediate and continuing physical or emotional needs of the child for extended periods of time.
(3) Any other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home for the child, based upon expert opinion or based upon an established pattern of behavior.
The State must prove the elements of one of the enumerated grounds by clear and convincing evidence to sever the parental, bond. La. Children’s Code art. 1035(A); Santosky v. *805 Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (holding that the minimum standard of proof in termination of parental rights cases in clear and convincing evidence); State ex rel. J.A., supra [99—2905 (La.1/12/00), 752 So.2d 806] at 811. The State must only establish one statutory ground for termination, but the trial judge must also find that termination is in the best interest of the , child. La. Children’s Code art. 1039; State ex rel. J.A., supra.
“It is well-settled that an appellate court cannot set aside a juvenile court’s findings of fact in the absence of manifest error or unless those findings are clearly wrong.” In re A.J.F., 00-0948 (La.6/30/00), 764 So.2d 47, 61. “Where there is conflicting testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even when the appellate court may feel that its own evaluations and inferences are as reasonable as those of the trial court.” Id.; Rosell v. ESCO, 549 So.2d 840 (La.1989). “[I]f the trial court or jury findings are reasonable in light of the record [¿reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.” Rosell, supra at 844. “Where there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong.” • Id. “In its manifest error review, it is important that the appellate court not substitute its opinion when it is the juvenile court who is in the unique position to see and hear the witnesses as they testify.” In re A.J.F., supra at 62. “The trier of fact is not disadvantaged by the review of a cold record and is in a superior position to observe the nuances of demeanor evidence not revealed in a record.” Id.
Both parents admit that more than one year elapsed between the time the children were placed in foster care and the time DSS filed for termination. However, they argue that the trial court’s conclusion that they did not substantially comply with the DSS case plan was erroneous.
In regard to the father, F.H., the record establishes that he did maintain suitable employment. However, he did not visit with the three minor children between the time they were placed into State custody and the date of the termination hearing. Although he argues that the visits set up by the State interfered' with his work schedule, testimony established that on a number of occasions, when S.M’s case worker provided S.M. transportation from a visit to her home, F.H. was found at their trailer. Additionally,' F.H. failed to attend holiday visits which were arranged outside of normal working hours to accommodate him. F.H. also failed to attend parenting classes as per his case plan. Finally, although F.H. agreed to attend substance abuse therapy or verify through drug testing that he was drug free, he did not attend therapy and the only drug test result, he submitted was through his employer, a year and one-half before the termination proceeding.
| ^Furthermore, F.H.’s psychological evaluation was not promising. He has a history of difficulty parenting his children, which may be due, in part to his intellectual capability being in the mild mental retardation range. Testing showed him to be a man who has trouble organizing his thoughts and following through with plans. He has limited coping ability and shows anger towards people in authority, feeling *806 that they are unfairly critical of him. Dr. Henry J. Lagarde, the psychologist who evaluated F.H., concluded that F.H. had limited parenting skills; that these skills were unlikely to improve; and that the more children that were in the home the greater his difficulty would become. Adding to F.H.’s difficulties is the fact that there are other children in the home not party to this case and that all three of the boys who are the subjects of these proceedings have been diagnosed with Attention Deficit Hyperactivity Disorder (ADHD).
Considering the record before us, we find that the State carried its burden of proof as to the father, F.H. F.H. failed to communicate with his children; he failed to attend court approved scheduled visits with his children; he failed to comply with the portion of his case plan requiring he attend substance abuse therapy or verify through drug testing that he was drug free; and from the record there appears that there is little, if any, chance that he could change in the future.
Accordingly, that portion of the trial court’s judgment terminating F.H.’s parental rights is affirmed.
As to the children’s mother, S.M., she has also been evaluated as having intelligence in the mild mental retardation range. Dr. Lagarde stated that based upon S.M.’s history of difficulty in caring for the children and considering her mild retardation, he did not feel she was capable of providing adequate care for these | fichildren. When asked: “Is this parent capable of successfully parenting these children, who are considered special needs [sic]?,” Dr. Lagarde replied: “I think the simple response to that is, no.” He went on to state that he felt the children would be in further danger of neglect if they were returned to their mother’s custody.
Additionally, we considered the testimony of Ms. Mary Ethridge, the case worker assigned to the case. Ms. Ethridge testified that in an attempt to help S.M., an in-home therapist, Mike Livingstone, a board certified social worker, was assigned to her case. Ms. Ethridge testified that as long as Mr. Livingstone was in the home to assist S.M., everything was fine. But when his services were withdrawn the situation “gradually became worse and worse.” When asked why Mr. Livingstone’s services were terminated, Ms. Ethridge stated that the agency just couldn’t continue his services forever. Ms. Ethridge also testified that the agency attempted to find classes to help S.M. learn to parent, but that the classes were not beneficial due to her “intellectual handicap.”
While the record demonstrates that S.M. does not posses the intellectual capacity to mother her children, it contains no evidence from which we can conclude that it would be in the children’s best interests to terminate her parental rights. S.M. visited with her children and attempted to complete her case plan. Her success in completing the plan, however, was impeded by her intellectual capacity. Even Ms. Ethridge acknowledged that S.M. “worked very hard at complying with her case plan.”
This court has previously recognized the fundamental concept that a child has the right to know and love his parents. In re Billeaud, 600 So.2d 863 (La.App. 3 Cir.1992). The natural rights between parents and their children are reciprocal and should not be denied except when a parent has proven himself unworthy of his child’s love. In re Adoption of B.G.S., 556 So.2d 545 (La.1990); In re Elliott, 93-750 (La.App. 3 Cir. 12/8/93), 630 So.2d 281, writ denied, 94-0076 (La.3/11/94), 634 So.2d 396. Parental rights give rise to a fundamental liberty *807 interest and warrant great deference and vigilant protection under the law. State in the Interest of Q.P., 94-609 (La.App. 3 Cir. 11/2/94), 649 So.2d 512. Furthermore, because termination of parental rights is in derogation of the natural and fundamental liberties of the parent, proof of the grounds for termination must be proven by at least clear and convincing evidence. Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); La.Ch.Code art. 1035. Thus, the termination of parental rights is a severe action which requires an onerous burden of proof. State in the Interest of J.M.L.; 540 So.2d 1244 (La.App. 3 Cir.1989).
In the Interest of A.D.H., C.A.H., and H.L., 01-107, pp. 4-5 (La.App. 3 Cir. 5/2/01); 784 So.2d 854, 858, writ denied, 01-1509 (La.6/22/01); 794 So.2d 797.
S.M. has done her best. We find her best, not being good enough, does not meet the level of proof necessary to forever sever her relationship with these children. In reaching our decision, we considered not only those factors mandated by statute, but a number of additional factors which we found to be important in this case: (1) the strong bond between the children, their mother, and their siblings, with whom they visit regularly; (2) the psychological and emotional impact these children may suffer if denied the right to see their mother and siblings again; (3) the benefits of maintaining the children in long-term foster care where they can maintain a relationship with their natural family as well as receiving the advantages provided by their foster family; and (4) the probability of adoptive placement, which is less probable for older children and for a sibling “unit” i.e., one placement for all three of the children involved. The record reflects that the children are thriving in their foster home; there is no indication that they will not continue to do so.
| ¡¡Therefore, we find that, as to S.M., the State has failed to prove, by clear and convincing evidence, that it would be in the best interests of these children that S.M.’s rights be terminated.
Accordingly, the judgment of the trial court is affirmed as to F.H. and reversed as to S.M. In as much as S.M. and F.H. appear as paupers, we pretermit the assessment of costs.
AFFIRMED IN PART; REVERSED IN PART.