# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 07-1395


**W.E.B. APPLYING FOR ADOPTION**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 3071145
HONORABLE LESTER P. KEES, DISTRICT JUDGE


**\*\*\*\*\*\*\*\*\*\***


**ULYSSES GENE THIBODEAUX**
**CHIEF JUDGE**


**\*\*\*\*\*\*\*\*\*\***


Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and
Glenn B. Gremillion, Judges.


                                                        **AFFIRMED.**

**Edwin Louis Cabra**
**Cabra & Leach**
**P. O. Box 1710**
**Leesville, LA 71446**
**Telephone: (337) 239-2567**
**COUNSEL FOR:**
    **Appellees - C.W.W. and C.S.W.**


**Elvin C. Fontenot, Jr.**
**110 East Texas Street**
**Leesville, LA 71446**
**Telephone: (337) 239-2684**
**COUNSEL FOR:**
    **Appellant - W.E.B.**


**Scott Westerchil**
**101 South First Street**
**Leesville, LA 71446**
**Telephone: (337) 239-9076**
**COUNSEL FOR:**
    **Appellee - C.W.**

**Tammy Lloid**
**La. DSS/OCS, Alex. Regional**
**P. O. Box 832**
**Alexandria, LA 71309**
**Telephone: (318) 487-5227**
**COUNSEL FOR:**
    **Appellee - Louisiana Department of Social Services, Office of Community Services**

**THIBODEAUX, Chief Judge.**

The stepfather of two minor children petitioned for intra-family adoption. The trial court denied the petition, concluding that although the natural father failed to make child support payments for approximately six months and his consent to the adoption was dispensed with, the adoption of these children by their stepfather was not in the children's best interest.

### I.

### ISSUE

We shall consider whether the trial court committed manifest error in denying the stepfather's petition for intra-family adoption of his wife's two minor children.

### II.

### FACTS

The mother of the children, H.B.,[1] and their natural father, C.W., were previously married. From their marital union, two children were born: a boy, C.W.W., and a girl, C.S.W. After a few years into their marriage, H.B. and C.W. filed for divorce. During the divorce proceedings, both parents agreed to share joint custody of the children. However, pursuant to allegations of C.W.'s drug use, the custody arrangements were modified, thereby granting H.B. full custody of the children, while C.W. retained supervised visitation. Under the custodial agreement, the supervised visitation was to be exercised at the residence and under the supervision of the children's paternal grandfather, D.W.

---

[1]Pursuant to Rule 5-2 of the Uniform Rules-Courts of Appeal, initials are being used to ensure the confidentiality of the minors that are the subject of the proceeding.

After the divorce was finalized, H.B. married W.E.B. The couple have been married and living with the children for over a year. W.E.B. petitioned for the adoption of the children, and C.W. filed an intervention, opposing the adoption of his children by their current stepfather.

At the adoption hearing, both H.B. and W.E.B. maintained that the best interest of the children would be served by allowing W.E.B. to adopt the children because it would bring much needed stability to the children's lives. According to W.E.B., he has been taking care of the children financially, emotionally, and spiritually ever since H.B. and he got married. He testified that he has been providing the children with financial support, as C.W. has not fulfilled his agreed-upon child support obligations. At the hearing, it was adduced that C.W. had only paid $100 in child support in a six-month period.

W.E.B. testified that he has proven to be a stable parental figure in the lives of these children as he plays with them on a daily basis, bathes and feeds them, and goes to church with them every Wednesday and Sunday. Accordingly, the children's current living environment has proven conducive to a strong parental-child relationship between W.E.B. and the children.

To further support the grant of the adoption, H.B. maintained that C.W. has shown disinterest in the lives of his children. She testified that he would visit the children sporadically and at odd hours, thereby contravening the terms of the supervised visitation arrangement as agreed between H.B. and C.W. at the custody hearing. Lastly, H.B. stated that she feels uneasy about leaving her children in the presence of C.W. alone because of drug use allegations.

In response to H.B. and W.E.B.'s contentions, C.W. argued that he did not satisfy his child support obligations as agreed between C.W. and H.B. because

they both had entered into a private and separate agreement, whereby C.W. was to save money in order to get his own apartment, thus moving out of his mother's house. With regards to the lack of contact between him and the children, C.W. stated that he was not neglecting his children; rather, the terms of the supervised visitation proved inconvenient because his father, the person at whose house and under whose supervision the visitations were to be conducted, has multiple engagements that drive him away from his house on the weekends. Finally, in response to the drug use allegations, C.W. maintained that he only tested positive for drug use once and that the day after he tested positive, he underwent another drug test which came back negative. He further explained that the drug use allegations were unsubstantiated. According to him, he had engaged in an argument with his girlfriend and, out of anger, she executed an affidavit stating that C.W. had been continuously using drugs at his mother's house.

At the conclusion of the adoption hearing, the trial judge determined that severing filial ties was not in the children's best interest and, therefore, denied the petition for adoption.

### III.

### LAW AND DISCUSSION

**Standard of Review**

It is settled law that the denial or grant of a petition for adoption poses a question of fact. *Leger v. Coccaro*, 98-202 (La.App. 3 Cir. 4/29/98), 714 So.2d 770, *writ denied*, 724 So.2d 740 (La. 7/2/98). Therefore, "[a]n appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong." *Blackman v. Brookshire Grocery Co.*, 07-348, p. 2, 966 So.2d

1185, 1187 (La.App. 3 Cir. 10/3/07) (citing *Rosell v. ESCO*, 549 So.2d 840 (La.1989)).

**A.**

**Did the district court err in denying the stepfather's petition to adopt his wife's two children?**

> Louisiana courts have historically been reluctant to sever the parent-child relationship and derogate from the natural rights inherent therein since the jurisprudence recognizes the fundamental belief that a child has a right to know and love his parents and such rights should not be denied except when the parent has proven himself unworthy of this love.

*In re K.L.H.*, 99-1995, p. 6-7 (La.App. 3 Cir. 9/20/00), 771 So.2d 706, 710 (citations omitted). "The seriousness and finality of the severing of the relationship between the parent and child is a factor to be considered. The importance and benefit to the child of a continued relationship with a parent is to be considered." *In re Glass Applying for Adoption*, 424 So.2d 383, 388 (La.App. 2 Cir. 1982) (citation omitted). Thus, pursuant to these policies, there is a presumption that maintaining filial ties between the child and the natural parent benefits the child because severance of such ties may prove detrimental to the child's well being.

To determine whether the grant or denial of a petition for adoption is warranted, the paramount consideration is the best interest of the child. *Leger*, 714 So.2d 770. This determination is assessed on the facts of each individual case, and the trial court is vested with great discretion in making such decision. *Id*.

In the context of intra-family adoption, however, the best interest of the child is determined by the court engaging in a "dual focus" analysis. For instance, where the petitioner of the adoption is the step-parent who is married to the natural parent having custody of the child, Louisiana courts have declared that:

4

> The most important factors are the child's relationship with . . . [the] stepfather and . . . [the] natural father. It is not enough to examine the love and home environment provided by the petitioner/stepparent. It is necessary as well to examine the depth of closeness of the child's ties with the non-custodial natural parent, and the effect which the loss of this relationship would have on a child. The court must also consider the seriousness and finality of the severing of the relationship between the parent and child, as well as the importance and benefit to the child of a continued relationship with the parent.

*Id*. at 773 (citations omitted). For this reason, "[w]here the evidence indicate[s] a real probability that the children can have and enjoy and benefit from a continuing relationship with their [natural parent], this is an appropriate factor to be considered in determining the best interest of the children." *In re Glass*, 424 So.2d at 388.

Notwithstanding the courts reluctance to sever a parent-child relationship, the presumption that maintaining filial ties between the natural parent and child is in the child's best interest may, nevertheless, be rebutted by the petitioner if any of the following is established: 1) no natural parent-child relationship exists, 2) the natural parent is indifferent about the child's well being, or 3) the natural parent's visits with the child have been sporadic or inconsistent. *In re Farrar,* 93-1347 (La.App. 3 Cir. 4/6/94), 635 So.2d 674.

In this case, after a thorough review of the record, it is clear that the evidence supports the trial court's judgment. Therefore, we find the trial court's judgment neither manifestly erroneous nor clearly wrong. However, we are not condoning C.W.'s actions. To the contrary, we deprecate the fact that C.W. disregarded his parental duty to provide financially for his children. The fact that C.W. and H.B. may have entered into an extrajudicial agreement absent court intervention did not derogate his inherent responsibility and legal duty as a father to financially support his children.

5

Nevertheless, the fact that C.W. did not support his children financially for a period of approximately six months does not necessarily make him unworthy of his children's love. Indeed, parental duties include supporting one's children financially, but there are other parental responsibilities that are incapable of being measured monetarily because they are invaluable. For instance, nurturing and playing an active role in a child's developmental stages are virtues that money cannot buy. We are not saying that C.W. is entitled to receive the title of father of the year; he has certainly exhibited certain human frailties, but in our opinion these flaws are not so egregious as to justify the severance of filial ties between C.W. and his children.

From the testimony, it is clear that C.W. tried to contact his children on multiple occasions, albeit the times when he tried to see them were not appropriate, according to their mother. Likewise, C.W.'s reason as to why he did not pay child support is not so farfetched as to make it implausible. After all, he did make a child support payment, although it was less than half of the amount he is supposed to pay on a monthly basis. Furthermore, the record also shows that the older child, C.W.W., maintains a great relationship with his paternal grandfather. Thus, the evidence contained in the record indicates a real probability that the children can derive a benefit from a continuing relationship with their father as well as with their paternal family.

IV.

**CONCLUSION**

For the foregoing reasons, we find that the stepfather, W.E.B., failed to establish any of the factors needed to rebut the presumption that maintaining filial ties is in the children's best interest. Accordingly, we affirm the trial court judgment. All costs of appeal are assessed against the appellant, W.E.B.

**AFFIRMED.**