714 So.2d 770 (1998)
In re Ron Christopher LEGER, Applying for Intrafamily Adoption of Robert Michael Coccaro, II, Plaintiff-Appellee,
v.
Robert Michael COCCARO, Sr. Defendant-Appellant.
No. 98-202.
Court of Appeal of Louisiana, Third Circuit.
April 29, 1998.
*771 Kent Steven DeJean, Eunice, for Christopher Leger et ux.
Michael Phillip Maloney, Lafayette, for Robert Michael Coccaro.
Jackie Harrell, for Lafayette Region Office of Community Services.
Before THIBODEAUX, SAUNDERS and DECUIR, JJ.
DECUIR, Judge.
Robert Michael Coccaro, Sr. appeals a judgment of the trial court granting an intrafamily adoption of his minor son to Ron Christopher Leger. For the reasons that follow, we reverse.

FACTS
Robert Michael Coccaro, Sr.(hereinafter Coccaro) and Cynthia Darst Leger were married in Louisiana in July 1991. Robert Michael Coccaro, II (hereinafter Michael) was born on November 11, 1991. A petition for divorce was filed on December 10, 1992, and a Decree of Divorce was rendered on October 26, 1993 in the Tulsa County District Court in the State of Oklahoma. Cynthia was awarded custody of Michael, and Coccaro was ordered to pay $116.00 per month in child support and fifty-two percent of the employment search and school expenses. The child support award was subsequently increased to $199.36. On June 10, 1996, a judgment for $4,032.76 in child support arrearage was entered against Coccaro. On May 30, 1997, Ron Christopher Leger and Cynthia filed a petition for intrafamily adoption. Coccaro contested the adoption. The trial court found that he failed to pay child support for one year and, therefore, lost his right to object to the adoption and that the adoption was in the best interest of Michael. Coccaro lodged this appeal.
The cast of characters is important in determining the outcome of this family drama. The mother, Cynthia Darst Leger, was thirty-three years old at the time of trial. She admitted to being married five times and having a total of five children including Michael. Coccaro suggests that there were more marriages and, generally, Cynthia's testimony regarding marriages was vague and uninformative. Three of her children are in the custody of their fathers. At the time of trial, her latest marriage was to Ron Christopher Leger on September 13, 1995 in Georgia or South Carolina. The sworn petition and the sworn testimony of Leger and Cynthia do not agree on the location; however, the record indicates that the Department of Social Service verified that the marriage did occur. Cynthia has moved numerous times since her divorce from Coccaro, possibly as many as eight times. She has allowed Coccaro's parents to see Michael, but only on the condition that they not mention Coccaro's name. She has cooperated with visitation when it suited her needs, but has been uncooperative at other times.
Coccaro was formerly the owner of his own exercise equipment business. Prior to the divorce, he shared child care responsibilities and even took Michael to work at his business on a regular basis. After the divorce and bitter custody battle, Coccaro went into a depression that affected all aspects of his life and required several courses of medication including Prozac and other anti-depressants. His exercise equipment business failed, and for a time he was forced to live with his parents. His attention to payment of his child support obligation has been sporadic at best and he admits to not making payments since November of 1995. His employment history reflects temporary jobs for several years after his business failed with minimal earnings. However, the record reflects that his father offered to make child support payments for him and Coccaro rejected the offer. He obtained training in 1996 for heating and air conditioning repair *772 and, at the time of trial, had been working as a service manager for Montgomery Ward for approximately nine months. He apparently has managed his depression and settled into a more stable work environment at a salary that would make child support payments easier. He has not seen Michael since November of 1995 and last spoke to him in December of 1995. He has sent gifts and he claims to have attempted phone contact. Cynthia has caller ID service but claims she cannot recognize Coccaro's calls. The record indicates that Coccaro has tried to maintain contact over the years, but his depression and Cynthia's constant moving has made sustained contact difficult.
Leger is Cynthia's most recent husband. He is a disabled oil field worker who lost part of a hand in an employment-related accident. He is drawing disability and cannot return to his former employment. He has provided care for Michael since his marriage to Cynthia and apparently has a good relationship with him. He and Cynthia jointly filed the petition for adoption, and he and Cynthia have a child born of the marriage as well.
Finally, Coccaro's parents have made every effort to keep in contact with Michael. They call frequently and have accepted a condition of visitation imposed by Cynthia that they not mention Coccaro's name. It is evident that they desire to be a part of Michael's life.
With this background established, we now turn to the assignments of error alleged by Coccaro.

"JUST CAUSE" FOR FAILURE TO PAY CHILD SUPPORT
Coccaro first alleges that the trial court erred in finding that he did not show "just cause" for his failure to support Michael for one year prior to trial and, thus, lost the right to object to an intrafamily adoption. We disagree.
At the outset, we note that an appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Stobart v. State, Through DOTD, 617 So.2d 880 (La. 1993). A two-tiered test for reversal of a fact finder's determination has been established by the Louisiana Supreme Court: (1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong. Stobart, 617 So.2d at 882, citing Mart v. Hill, 505 So.2d 1120, 1127 (La.1987).
An adoption may not be granted without the consent of both parents, except in situations in which parental consent has been dispensed with by law. Adoption of Otterstatter v. Otterstatter, 525 So.2d 117 (La.App. 3 Cir.1988). La.Ch.Code art. 1245 provides the statutory grounds under which a parent may lose his right to consent to an adoption. The basic requirements applicable in this case are that: the parent married to the adopting stepparent have sole or joint custody and; the noncustodial parent is an nonresident of this state and has failed to support the child for one year. La.Ch. Code art. 1245(C). In addition, the jurisprudence requires that the failure to pay child support must have been without "just cause," Wyatt v. Department of Public Welfare, 442 So.2d 1369 (La.App. 3 Cir.1983), and that the adoption must be in the best interest of the child. Adoption of Latiolais, 384 So.2d 377 (La. 1980).
The trial court found that Coccaro failed to support Michael for more than a year prior to trial without "just cause." Coccaro admitted at trial that he had not made child support payments since November of 1995. However, he claims that the trial court erred in finding that his depression and Cynthia's moving did not constitute "just cause" for his lack of support.
We find no error in the trial court's judgment on this issue. The record reflects that Coccaro had adequate income in 1996 to pay child support and did not. His father testified that he offered to pay the child support, and Coccaro declined. The medical evidence regarding Coccaro's illness is sparse and not supported by testimony or deposition. Cynthia has not moved since 1995, and the record reflects that Coccaro knew where she was and still did not send support. Under *773 these circumstances, we find that the trial court's finding that Coccaro did not show "just cause" for his failure to support Michael is reasonable. Accordingly, this assignment has no merit.

BEST INTEREST OF THE CHILD
By this assignment, Coccaro contends the trial court erred in finding that an intrafamily adoption by Leger was in Michael's best interest. We agree.
In In re Farrar, 93-1347, P. 3-5 (La.App. 3 Cir. 4/6/94); 635 So.2d 674, 676-77, we said:
In reviewing the law in the area of adoption, we note that there is no clear definition of absolute outline of factors that would be used in determining what is in the best interest of a child. Louisiana courts have cited several factors including the ability of the stepparent to provide for the child's physical needs, the stepparent's ability to fulfill the psychological needs of the child, and lastly, whether the aforementioned considerations outweigh the existent natural parent-child relationship. In re Billeaud, 600 So.2d 863, 865 (La.App. 3d Cir.1992). More specifically, where a stepparent is married to the natural parent having custody and seeks to adopt that child, Louisiana courts have held:
The most important factors are the child's relationship with h[is] stepfather and h[is] natural father. It is not enough to examine the love and home environment provided by the petitioner/stepparent. It is necessary as well to examine the depth of closeness of the child's ties with the non-custodial natural parent, and the effect which the loss of this relationship would have on the child. In Re JGG v. JLF, 556 So.2d 236 (La. App. 2d Cir.1990). The court must also consider the seriousness and finality of the severing of the relationship between the parent and child, as well as the importance and benefit to the child of a continued relationship with the parent. Id.

Knapp v. Adoption of Cotten, 577 So.2d 241, 246 (La.App. 1st Cir.), writ denied, 580 So.2d 364 (La.1991). Consequently, a court, for example, cannot automatically grant a stepparent's petition for adoption even where the relationship between a stepfather and his stepson is closer and more affectionate than the relationship between the son and his natural father. The law requires that the court also evaluate the relationship between the child and the natural parent and the effect on the child of severing the natural parent-child relationship.
This court has previously addressed the importance of the natural parent-child relationship. In Latiolais, which was affirmed by the Louisiana Supreme Court, we pointed out that an adoption terminates any right of visitation between the child subject to the adoption and the noncustodial natural parent. Adoption of Latiolais, 376 So.2d 555, 560 (La.App. 3d Cir.), affirmed 384 So.2d 377 (La.1980). In reviewing a stepparent's petition for adoption and the effect on the natural parent-child relationship, this court held: "[Granting the petition for adoption] would be tantamount to a pronouncement of death between them." Latiolais, supra. This death in the natural parent-child relationship would extend to the entire family of the natural parent. Latiolais, supra. In an adoption, a child's family name changes and he becomes a new legal person with no legal ties to his natural family. In the Louisiana Supreme Court's opinion affirming our decision in Latiolais, the court referred to the issue of the rupture of the natural parent-child relationship as a crucial factor in determining the best interest of the child. Adoption of Latiolais, 384 So.2d 377, 378 (La.1980).
In another Louisiana Supreme Court case, the court again addressed the importance of the biological relationship. Although this case involved a private adoption, its discussion of general policy considerations is relevant and helpful in determining the appropriate weight to give to the natural parent-child relationship.
Under broadly shared social values the general rule is that the responsibility and opportunity of custody is assigned to a child's natural parents. The high value *774 placed on family autonomy reflects a consensus that the natural parent-child relationship should be disturbed only if necessary to protect the child from physical or psychological harm. Moreover, preservation of the child's sense of lineage and access to his extended biological family can be important psychologically, as evidenced by the felt need of some adoptive children to search out their natural parents.
J.M.P., 528 So.2d at 1015.
"Louisiana courts have historically been reluctant to sever the parent-child relationship and derogate from the natural rights inherent therein since the jurisprudence recognizes the fundamental belief that a child has a right to know and love his parents and such rights should not be denied except when the parent has proven himself unworthy of this love." Billeaud, 600 So.2d at 866 (citations omitted); see also, Hinton, 390 So.2d 972 (holding petitioner must show that the denial of a petition for adoption, which would rupture the natural parent-child relationship, would operate to the detriment of the child). In cases similar to the one before this court, i.e. 1) where a stepparent is married to the natural parent having custody, 2) a stepparent's relationship with stepchild is excellent, and 3) a stepparent seeks to adopt that child, Louisiana courts have adhered to the presumption that maintaining the natural parent-child relationship is in the best interest of the child unless petitioner shows otherwise.
In order to rebut the presumption that it is in the best interest of the child to keep open or continue the natural parent-child relationship, Louisiana courts have required that the petitioner establish one of the following: 1) no natural parent-child relationship exists, 2) the natural parent is indifferent about the child's well being, or 3) the natural parent's visits with the child have been sporadic and inconsistent.
(Footnote omitted).
In the present case, it is clear that a natural parent relationship existed. Coccaro split primary care duties during Michael's first eighteen months and has tried to visit Michael in the past. Moreover, Coccaro's parents have tried to maintain a relationship with Michael. With regard to the second consideration, it is evident that Coccaro cares about the relationship with Michael. It is evidenced by his attempts to gain custody, his opposition to this adoption, his attempts at visitation, and perhaps by the severe depression that has impacted his life. We are aware that the third element is present in this case. However, we find that Coccaro's failure to visit over the period before the trial is justified due to his illness, the resistance of Cynthia to calls and visitation, and the fact that Coccaro does not reside in the same state. While the trial court properly found that these factors were not sufficient to justify failure to provide support, we find that they created a larger impediment to continued contact.
Furthermore, we note that the provisions of La.Ch.Code art. 1245 are not mandatory provisions. Nothing in the statute requires that the court considering the adoption must grant it merely because the technical conditions of the statute are met. Adoption of Latiolais, 376 So.2d 555 (La.App. 3 Cir.1979), aff'd, 384 So.2d 377 (La.1980). However, the adoption should normally be granted in the absence of extenuating circumstances. Adoption of Edwards, 369 So.2d 210 (La.App. 3 Cir.1979). Ultimately, however, whether an adoption is in the best interest of the child must be decided on the facts of each individual case, and the trial court is vested with great discretion in making that determination. In re Billeaud, 600 So.2d 863 (La.App. 3 Cir.1992).
In this case, we find the trial court ignored extenuating circumstances. At trial, the judge expressed a lack of interest in Cynthia's marital history. He claimed to be interested only in the child's best interest at the moment. We find that approach was erroneous. Cynthia's past marital record has direct bearing on Michael's current best interest. Cynthia was thirty-three years old at the time of trial and had been married at least five times since she was fifteen years old. This means that, on average, her marriages have lasted three and one-half years. She had been married to Leger nearly two *775 years at the time of trial. Moreover, Leger is a disabled oil field worker who, at some point, will have to seek other employment. Situations such as these inevitably strain marriages as finances become tight and emotions run high. Cynthia's marital history calls into question her ability to weather that storm.
On the other hand, Coccaro has not been an exceptional, or perhaps even adequate, father. We in no way condone his failure to support his child. However, he has always been Michael's father and without intervention of the court would remain so. His family has demonstrated an ongoing concern for Michael. In fact, other than Cynthia, Coccaro's parents are the most consistent factor in Michael's life. They provide the stability that is lacking in his mother and father.
Under these circumstances, we find that it is not in the best interest of Michael to sever the parental bond with Coccaro at this time. Cynthia has not demonstrated that her current relationship is any less transient than her previous ones. Were this court to sever Michael's ties to Coccaro and his parents, he would be left without a critical piece of stability in his life should Cynthia's marriage deteriorate. We are unwilling to take that chance at the present time.
Accordingly, we find that the trial court erred in finding that an intrafamily adoption is in Michael's best interest at this time. The petition for intrafamily adoption should have been denied.

PROOF OF MARRIAGE AND CONSTITUTIONALITY
In his remaining assignments, Coccaro alleges that the trial court erred in finding that Cynthia and Leger were married and that La.Ch.Code art. 1245 is unconstitutional. Neither issue is properly before this court. The first is an affirmative defense, and Coccaro failed to assert it in his answer. Webster v. Rushing, 316 So.2d 111 (La.1975). Likewise, issues of constitutionality must first be presented at the trial court, the unconstitutionality must be specifically pleaded, and the grounds for the claim particularized. Williams v. State Dept. of Health and Hospitals, 95-0713 (La.1/26/96); 671 So.2d 899. Finally, these assignments are rendered moot by our disposition of the previous issues.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is reversed. The petition for intrafamily adoption of Robert Michael Coccaro, II by Ron Christopher Leger is hereby denied. All costs of this appeal are taxed to appellees, Cynthia and Ron Leger.
REVERSED AND RENDERED.