# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

## 09-1355


************

## IN RE: M.J.C. APPLYING FOR PRIVATE ADOPTION


************

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 90152-C
HONORABLE EDWARD BROUSSARD, DISTRICT JUDGE

************

JAMES T. GENOVESE
JUDGE

************

Court composed of James T. Genovese, Shannon J. Gremillion, and David E. Chatelain,* Judges.

**AFFIRMED.**


**Shepton Frank Hunter**
**708 South St. Antoine Street**
**Lafayette, Louisiana 70501**
**(337) 230-9777**
**COUNSEL FOR DEFENDANT/APPELLANT:**
　　**R.J.T.**


**Anthony J. Fontana, Jr.**
**210 North Washington Street**
**Abbeville, Louisiana 70510**
**(337) 898-8332**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
　　**M.J.C. and L.A.C.**

---

*Honorable David E. Chatelain participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**GENOVESE, Judge.**

In this adoption case, the Defendant/Appellant, R.J.T.,[1] the biological father of W.J.T., appeals the judgment of the trial court in favor of Plaintiffs/Appellees, M.J.C. and L.A.C., approving the adoption of W.J.T. For the following reasons, we affirm the judgment of the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

W.J.T. was born May 17, 2000, while L.A.C. and R.J.T. were married. L.A.C. and R.J.T. separated when W.J.T. was only four months old. L.A.C. subsequently remarried in March of 2008 to M.J.C. On March 30, 2009, M.J.C. filed a Petition for Adoption seeking to adopt W.J.T. In his petition, M.J.C. alleged that W.J.T.'s biological father, R.J.T., "ha[d] not visited nor had [he had] any communication whatsoever with [W.J.T.] since December of 2000[.]" R.J.T. filed an objection to the adoption. A hearing was held on August 6, 2009.

Testimony elicited at the adoption hearing revealed that R.J.T. had no contact with W.J.T. since December of 2000, when W.J.T. was seven months old. R.J.T. admitted this fact; however, R.J.T. testified that his efforts to contact W.J.T. after December of 2000 were thwarted by either his medical problems, his financial problems, or his fear that L.A.C. would seek to have him held in contempt for violating a protective order she had obtained against him. According to R.J.T., some time in 2003, he did attempt, through third parties, to give $2,400.00 in child support to L.A.C.

L.A.C. testified that she never received an offer of child support from R.J.T., nor had she ever received any monetary support from R.J.T. after their separation in

---

[1]Pursuant to Uniform Rules—Courts of Appeal, Rules 5–1 and 5–2, the initials of the parties will be used to protect and maintain the privacy of the minor involved in these proceedings.

September of 2000. According to L.A.C., except for R.J.T.'s efforts to send her flowers and a card shortly after their separation, she never heard further from R.J.T.

According to R.J.T., he no longer has the medical problems which he claims prevented him from seeking visitation with W.J.T. R.J.T. also testified that he would want to reconnect with W.J.T. and that he was willing to take the necessary steps to be a father to W.J.T. Finally, R.J.T. testified that his remarriage in April of 2005 and his relationship with his step-children demonstrated his ability to be a fit parent of W.J.T.

The trial court granted M.J.C.'s petition for adoption and declared that "because of the lack of communication, lack of support, [R.J.T.'s] consent [to the adoption of W.J.T. by M.J.C.] is not necessary." A judgment was signed October 1, 2009, declaring "that the consent of the biological father was not necessary" and that "a final decree of adoption be entered . . . ." R.J.T. appeals.

## ASSIGNMENTS OF ERROR

On appeal, R.J.T. asserts that "[t]he trial court failed to apply a presumption in favor of the natural parent, the biological father[,]" and that "the trial court misapplied the burden of proof."

## LAW AND DISCUSSION

In *In re W.E.B.*, 07-1395, pp. 3-4 (La.App. 3 Cir. 3/5/08), 980 So.2d 123, 126, this court set forth the applicable appellate standard of review in adoption cases as follows:

> It is settled law that the denial or grant of a petition for adoption poses a question of fact. *Leger v. Coccaro*, 98-202 (La.App. 3 Cir. 4/29/98), 714 So.2d 770, *writ denied*, 724 So.2d 740 (La. 7/2/98). Therefore, "[a]n appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong."

2

*Blackman v. Brookshire Grocery Co.*, 07-348, p. 2 (La.App. 3 Cir. 10/3/07), 966 So.2d 1185, 1187 (citing *Rosell v. ESCO*, 549 So.2d 840 (La.1989)).

R.J.T., in brief, contends that the issues before this court are: (1) "[d]oes the biological father benefit from a presumption[;]" and (2) "[d]oes the burden shift to the adopting step-parent[.]" R.J.T. argues that "there is a presumption that the natural father . . . would be a benefit as a non-domiciliary parent of the minor child. There was no evidence to rebut that presumption." R.J.T. contends that the trial court failed to consider whether it was in the best interest of W.J.T. to approve the adoption.

Louisiana Children's Code Article 1245 provides, in pertinent part:

A. The consent of the parent as required by Article 1193[2] may be dispensed with upon proof by clear and convincing evidence of the required elements of either Paragraph B, or C of this Article.

B. When a petitioner authorized by Article 1243[3] has been granted custody of the child by a court of competent jurisdiction and any

---

[2]Louisiana Children's Code Article 1193 provides, in pertinent part:

Unless rights have been terminated . . . consent to the adoption of a child . . . shall be required of the following:

. . . .

(2) The father of the child, regardless of the child's actual paternity, if any of the following apply:

(a) The child is a child born of the marriage in accordance with the Louisiana Civil Code or its legal equivalent in another state.

[3]Louisiana Children's Code Article 1243 provides, in pertinent part:

A. A stepparent, stepgrandparent, great-grandparent, grandparent, aunt, great aunt, uncle, great uncle, sibling, or first, second, or third cousin may petition to adopt a child if all of the following elements are met:

(1) The petitioner is related to the child by blood, adoption, or affinity through a parent recognized as having parental rights.

(2) The petitioner is a single person over the age of eighteen or a married person whose spouse is a joint petitioner.

(3) The petitioner has had legal or physical custody of the child for at least six months prior to filing the petition for adoption.

3

one of the following conditions exists:

(1) The parent has refused or failed to comply with a court order of support without just cause for a period of at least six months.

(2) The parent has refused or failed to visit, communicate, or attempt to communicate with the child without just cause for a period of at least six months.

On appeal, R.J.T. blames his failure to maintain contact with W.J.T. on L.A.C.'s efforts to keep them apart. In brief, R.J.T. asserts: "As [W.J.T.] grew older, L.A.C. brainwashed [him] to believe [R.J.T.] would beat him up. . . . L.A.C. also taught [W.J.T.] to ignore the family of [R.J.T.] when seeing them at public places. This planned alienation was not in the best interest of the child." Finally, R.J.T. contends that "the evidence was unrefuted that during several years immediately prior to trial[, he] was conducting himself as an involved and effective parent in caring for his new wife . . . and her children and wanted to and could provide the same for [W.J.T.] . . . ."

Our review of the record reveals that R.J.T.'s allegations that L.A.C. prevented him from having a relationship with W.J.T. were neither proven nor substantiated by anyone other than himself. Also noteworty is R.J.T.'s assertion that his poor health prohibited him from seeking to have a parental bond with W.J.T. before now; yet, R.J.T. was obviously well enough to date and eventually remarry in 2005. We, as did the trial court, find R.J.T.'s assertions disingenuous and unpersuasive.

We also find no merit in R.J.T.'s contentions that the trial court erred in its failure to apply a presumption in his favor and misapplied the burden of proof. R.J.T. failed to visit, communicate, or attempt to communicate with W.J.T. without just cause for a period of at least six months; thus, any presumption in his favor was negated by his actions, or lack thereof.

4

We find that the trial court correctly concluded that the evidence was clear and convincing that R.J.T. "failed to visit, communicate, or attempt to communicate with [W.J.T.] without just cause for a period of at least six months[;]" therefore, pursuant to the provisions found in La.Ch.Code art. 1245, the trial court was legally correct in "dispens[ing] with" R.J.T.'s consent to the adoption. The trial court's judgment was neither manifestly erroneous nor clearly wrong; therefore, we affirm.

## DECREE

For the foregoing reasons, we affirm the judgment of the trial court. All costs of these proceedings are assessed against Defendant/Appellant, R.J.T.

**AFFIRMED.**