# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 18-822

IN RE:

APPLYING FOR THE AGENCY

ADOPTION OF M. L. D.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 14-J-375
HONORABLE CURTIS SIGUR, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## JOHN D. SAUNDERS
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Van H. Kyzar, and Candyce G. Perret, Judges.

**AFFIRMED.**

 Chantel Conrad
825 Kaliste Saloom Road
Brandywine III, Suite 150
Lafayette, LA 70508
(337) 262-2250
COUNSEL FOR APPELLANT:
        State of Louisiana, Dept. of Children and Family Services

**Kathy Lynn Cook**
**Mental Health Advocacy Service**
**302 Dulles Drive, Suite U-47**
**Lafayette, LA 70506**
**(337) 262-2030**
**COUNSEL FOR OTHER APPELLANT:**
      **G. L. D.**

**Thailund Porter-Green**
**Mental Health Advocacy Service**
**110 French Street, Suite A**
**New Iberia, LA 70560**
**(337) 251-9575**
**COUNSEL FOR OTHER APPELLEE:**
      **M. L. D.**

**Joseph A. Tabb**
**Baudry & Tabb, LLC**
**111 Wilson Street**
**Franklin, LA 70538**
**(337) 828-0454**
**COUNSEL FOR APPELLEES:**
      **Derek Diboll**
      **Tracey Diboll**

**SAUNDERS, Judge.**

Two minor children came into the custody of the State when the Agency received a report of neglect and lack of supervision. Subsequently, the children were adjudicated Children in Need of Care and placed in the home of Petitioners, Tracey Diboll and Derek Diboll, as a pre-adoptive placement. The biological siblings lived continuously in the home of Petitioners, until one of the siblings was hospitalized for behavioral issues. At that time, Petitioners filed a petition to adopt the remaining sibling, M.L.D. Defendants, Department of Children and Family Services ("DCFS"), as custodian of the minor children, and G.L.D., the sibling removed from the home, opposed the adoption and permanent separation of the biological siblings. M.L.D. also opposed the adoption. After an eight day trial, the trial court granted the adoption. It is from this judgment that Defendants appeal.

For the following reasons, we affirm.

I.

**ISSUE**

We must determine whether the trial court erred in granting the adoption of M.L.D.

II.

**STANDARD OF REVIEW**

It is settled law that the denial or grant of a petition for adoption poses a question of fact. *Leger v. Coccaro*, 98-202 (La.App. 3 Cir. 4/29/98), 714 So.2d 770, *writ denied*, 98-1423 (La. 7/2/98), 724 So.2d 740. Therefore, "[a]n appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong[.]" *Blackman v. Brookshire Grocery Co.*, 07-348, p. 2 (La.App. 3 Cir. 10/3/07), 966 So.2d 1185, 1187 (citing *Rosell v. ESCO*, 549 So.2d 840 (La.1989)).

III.

**FACTS AND PROCEDURAL HISTORY**

On July 24, 2014, G.L.D. and M.L.D.[1] were removed from their biological mother's care and placed in foster care by Defendant, DCFS, upon allegations of neglect and lack of supervision. In September 2014, the children were adjudicated Children in Need of Care ("CINC").

On July 13, 2015, allegations of physical abuse and neglect by the foster parents led to the children's removal and placement in the foster home of Plaintiffs, Tracey and Derek Diboll (the "Dibolls"). On May 27, 2016, parental rights were terminated and G.L.D. and M.L.D., (then ages eight and six respectivley), were freed for adoption.

Both G.L.D. and M.L.D. lived continuously with the Dibolls from July 2015, until January 2017, when G.L.D. was hospitalized for the third time and held for being suicidal and a threat to others. At that time, the Dibolls requested that DCFS remove G.L.D. from their home.

On March 9, 2017, the trial court granted the Dibolls Ex Parte Injunction preventing DCFS from exercising its custodial right to remove M.L.D. from their home. On June 28, 2017, this Injunction was vacated on a Motion by DCFS. Shortly thereafter, M.L.D. was moved into the same certified foster home as her brother, where both children have lived throughout the hearings on the Adoption.

On January 30, 2017, the Dibolls filed a petition to adopt M.L.D. only. On February 16, 2017, DCFS filed an Intervention, asserting the position that it is not in M.L.D.'s best interests to be legally and permanently separated from her full

---

[1] The initials of the children and their parents are used herein pursuant to Uniform Rules – Courts of Appeal, Rule 5-2. *See also* Uniform Rules – Courts of Appeal, Rule 5-1.

biological sibling. On March 31, 2017, a hearing on the Intervention was held and continued to May 23, 2017, in order to obtain an independent bonding assessment.

In May 2017, a bonding assessment was done by Brad Sibille. On May 23, 2017, a hearing was held and continued to July 21, 2017, as the bonding assessment that was done did not address the areas that the court and the parties were concerned about. At that hearing, the trial court ordered that Dr. Kenneth Bouillion conduct a bonding assessment of all parties involved. The July 21, 2017, hearing was continued to August 14, 2017, due to Dr. Bouillion's report being incomplete. On August 7, 2017, the attorneys for the parties and the trial court received a copy of Dr. Bouillion's report. On August 14, 2017, the testimony of Dr. Gary Mallon, an independent expert for DCFS, was taken in chambers.

On August 14, 2017, during the pre-trial conference, the Dibolls presented an amended Petition for Adoption of Child in Custody of Agency requesting that the Petition to Adopt be amended to include G.L.D. The trial court denied the Amended Petition, and the Petition to Adopt M.L.D. only commenced. That same date, M.L.D. testified in chambers on her own behalf. On that same date, and again on September 12, 2017, the Dibolls presented evidence and witnesses on their behalf. At the conclusion of the Dibolls' case-in-chief, DCFS made an oral motion to have the case dismissed for failure of the Dibolls to prove their case. M.L.D. joined in this Motion. The trial court denied the motion.

The trial was held over eight days: August 14, September 12, October 17, 20, 25, 31, November 27, and December 12, all in 2017. DCFS presented witnesses and evidence on September 12, 2017, October 17, 2017, October 25, 2017, October 31, 2017, and November 27, 2017. On December 12, 2017, G.L.D. presented witnesses and evidence on his behalf, and the Dibolls presented their rebuttal case.

At the trial court's request, post-trial memos were submitted in lieu of closing arguments. On or about December 20, 2017, the Dibolls presented an original post-trial memo. On or about December 27, 2017, DCFS submitted a post-trial memo. On or about January 2, 2018, M.L.D. submitted a post-trial memo. On or about January 3, 2018, the Dibolls submitted a reubuttal post-trial memo.

On February 28, 2018, the trial court rendered judgment with reasons, granting the adoption of M.L.D. by the Dibolls. On or about March 5, 2018, prior to the signing of a formal judgment, DCFS filed a Motion and Order for Appeal. On March 14, 2018, the Dibolls filed an objection to DCFS's Motion and Order for Appeal. That same date, DCFS filed an Exception of Lack of Jurisdiction and Response to the Objection. On March 15, 2018, the Dibolls filed a response to DCFS's exception. On March 22, 2018, G.L.D. filed a Response to Objection to DCFS's Motion and Order for Appeal and Subsequent Response by Counsel. On March 27, 2018, a hearing was held on the Dibolls Objection . . . and the responses, following which the trial court signed a judgment granting the adoption of M.L.D. by the Dibolls.

It is from this judgment that DCFS appealed suspensively on March 8, 2018, alleging seven assignments of error. G.L.D. filed a separate Motion to Appeal suspensively on March 27, 2018, alleging three assignments of error. M.L.D. also filed a brief on appeal, incorrectly labeled as an appellee brief, and joined in those arguments and prayers for relief stated by DCFS and G.L.D.

## IV.

## <u>DCFS'S ASSIGNMENTS OF ERROR</u>

1. The Trial Court erred in denying DCFS's Motion for Involuntary Dismissal of the Petition.

2. The Trial Court erred in finding that it was in **M.L.D.'s** best interest to be adopted by **Tracey Diboll** and **Derek Diboll**.

4

3.     The Trial Court erred in basing the best interest finding on a preponderance of the evidence.

4.      The Trial Court erred in basing the best interest finding solely on speculation.

5.     The Trial Court erred in granting the adoption of **M.L.D.** to **Tracey Diboll** and **Derek Diboll** without the consent of DCFS, the custodian of the child.

6.     The Trial Court erred in granting the adoption of **M.L.D.** to **Tracey Diboll** and **Derek Diboll** without a finding that DCFS was being unreasonable in withholding consent to the adoption.

7.     The Trial Court erred in casting the costs of the proceedings and the court ordered evaluation against the State.

## ASSIGNMENT OF ERROR NUMBER ONE:

In its first assignment of error, DCFS contends that the trial court erred in denying its Motion for Involuntary Dismissal of the Petition. We find no merit to this contention.

The issue to be resolved in reviewing a ruling on a motion for involuntary dismissal is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Matherne v. Jefferson Par. Hosp. Dist. No. 1*, 14-403 (La.App. 5 Cir. 12/16/14), 166 So.3d 297, *writ denied*, 15-117 (La. 4/10/15), 176 So.3d 1032.

Louisiana Children's Code Article 104(2) states that, if there are no applicable statutes in the Children's Code, the Code of Civil Procedure applies. Louisiana Code of Civil Procedure Article 1672(B) (emphasis added) provides:

> In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party **or may decline to render any judgment until the close of all the evidence.**

5

DCFS first argues that its Motion for Involuntary Dismissal was made in a timely manner. Our review of the record reveals that DCFS made its Motion for Involuntary Dismissal after the questioning of a single witness. Moreover, once the motion was made, the Dibolls made clear to the trial court that other witnesses still needed to testify, including an expert and the adoption worker. The trial court denied the motion and declined to render any judgment until the close of all evidence, stating, "plaintiffs have proven a sufficient case, at this point, subject to whatever the Defense comes up with."

Second, DCFS maintains that there is no clear and convincing evidence in the record that M.L.D. is freed for adoption. Louisiana Children's Code Article 1199(B) states: "The petition shall be accompanied by a certified copy of any order terminating the rights of the child's parents." The record reveals that DCFS did not argue this in its motion, nor did they file pleadings in the trial court identifying this as an issue before the court. As such, the record relfects that DCFS failed to make its Motion for Involuntary Dismissal in a timely manner, and failed to properly preseve before this court the issue of whether M.L.D. had been freed for adoption. We note also that the trial court took judicial notice in the record that on May 27, 2016, "the parental rights of M.G.A. and J.L.D. as it relates to G.L.D. and M.L.D. were terminated by this Court." Accordingly, we affirm the trial court's ruling on these issues.

**ASSIGNMENT OF ERROR NUMBER TWO:**

In its second assignment of error, DCFS contends that the trial court erred in finding that it was in M.L.D.'s best interest to be adopted by Tracey Diboll and Derek Diboll. We find no merit to this contention.

To determine whether the grant or denial of a petition for adoption is warranted, the paramount consideration is the best interest of the child. *Leger,* 714

6

So.2d 770. This determination is assessed on "the facts of each individual case, and the trial court is vested with great discretion in making that determination." *Id*. at 774.

The supreme court has acknowledged that it is sometimes necessary to separate siblings, *Tiffee v. Tiffee*, 254 La. 381, 223 So.2d 840 (1969); and, where it is in the best interest of the children to be separated, courts have approved such arrangements.

DCFS argues that the best interest finding was based solely on how long M.L.D. would have to " wait in limbo before an actual adoption would take place." Our review of the record reveals that the trial court exercised great patience in evaluating the testimony and credibility of the witnesses, and the history of the children and parties, over a span of eight days. The record reflects that there is substantial evidence that G.L.D.'s behavioral issues, which negatively affected the children's past placements, could also indefinitely delay the possibility of their being adopted together in the future. G.L.D.'s behavioral issues include, but are not limited to:

1. Behavior that has caused both children to have to change foster homes several times.

2. His diagnosis of Adjustment Dysregulation Disorder, Hyperactivity Disorder, and mood outbursts, Attention Deficit Disorder, Hyper Defiant Disorder, Oppositional Defiant Disorder, Post Traumatic Stress Disorder, Unspecified Impulse Disorder, Unspecified Anxiety Disorder, Unspecified Ticks, and Unspecified Learning Problems.

3. His various episodes of flashing out and assaultive behavior at school and at the Dibolls.

4. His violent and aggressive outbursts, some of which are triggered by M.L.D.

5. His being PEC'd ("Physicians Emergency Certificate") on December 2 and 9, 2016, and on January 16, 2017.

7

6.   His mental issues that go well beyond this adoption process.

The record further reveals that the trial court considered that M.L.D.:

1.   Is a 7/8 year old in the third (3rd) grade who impressed the trial court with her level of intelligence for a child of her age.

2.   Loves the Dibolls and it is her desire to be adopted by them.

3.   Clearly understood that her adoption by the Dibolls would have the effect of her being separated from her brother G.L.D.

4.   Was concerned about G.L.D. hurting her.

Ms. Levy, G.L.D. and M.L.D.'s therapist while they were residing with the Dibolls, testified that the Dibolls did everything they were supposed to do for G.L.D. and M.L.D., and that M.L.D. wanted to remain with the Dibolls. Ms. Levy also testified that she felt that some of G.L.D.'s outbursts were violent and aggressive; that his outbursts were triggered by different things, including M.L.D.; and that M.L.D. was concerned about G.L.D. hurting her.

Dr. Kenneth Bouillion's expertise as a clinical pyschiatrist was stipulated to by the parties. His evaluation of the children and the Dibolls occurred from June to November 2017. Dr. Bouillion testified that he felt that G.L.D. needs future treatment for an extended period of time by a pediatric neuropsychologist to determine if there is a cognitive impairment or if there is some neurological dysfunction. Dr. Bouillion further testified that after this period of treatment, no one knows what G.L.D.'s prognosis would be or whether he will need future treatment.

Dr. Ching Shih of Tyler Mental Health testified in this matter concerning G.L.D.'s diagnosis. Dr. Shih diagnosed G.L.D. as having Attention Deficit Disorder, Hyper Defiant Disorder, Oppositional Defiant Disorder, Post Traumatic Stress Disorder, Unspecified Impulse Disorder, Unspecified Anxiety Disorder, Unspecified Ticks, and Unspecified Learning Problems.

Joe Damiens, counselor for the Extra Mile Program, testified that in his experience working with DCFS, he has seen cases where children were adopted separately. In addition to cases he specifically worked on, he was also familiar with other cases, in general, with the Agency where siblings were not adopted together. He felt that the Dibolls seemed very bonded with M.L.D. He also felt that M.L.D. will have long-term effects and/or consequences if she is not adopted. He stated that it is possible that G.L.D.'s behaviors will never be improved.

At the conclusion of the presentation of the evidence, the trial court specifically found that:

> [T]he DIBOLLS are loving, generous and kind people. They are certified foster parents. . . . [T]hey performed all acts of caring foster parents. They placed the children in various activities and provided a caring home for them. . . . This Court notes that to some degree, [G.L.D.'s] issues are due to this adoption process, but [G.L.D.] has mental issues that go well beyond this adoption process as per Dr. Bouillion's testimony.

Based upon the record as a whole, we find that the trial court's ruling that it was in M.L.D.'s best interest to be adopted by Tracey Diboll and Derek Diboll was reasonable. Accordingly, we affirm the trial court's ruling on this issue.

## ASSIGNMENTS OF ERROR THREE AND FOUR:

We will address assignments of error three and four together as they assert that the trial court erred in basing the best interest finding on a preponderance of the evidence and/or a finding solely on speculation. We find no merit to these contentions.

The law does not state that the standard of evidence must be on a "clear and convincing" burden of proof standard. In *State in Interest of P.T.*, 14-1160, pp. 4-5 (La.App. 3 Cir. 3/4/15), 159 So.3d 1184, 1188, *writ denied*, 15-693 (La. 5/1/15), 169 So.3d 378, (emphasis added) (footnotes omitted), this court noted:

9

[L]ouisiana Children's Code art. 1217(B) . . . provides that "[t]he court, after hearing and after taking into consideration information from all sources concerning the adoption, may enter a final decree of agency adoption, or it may deny the adoption. **The basic consideration shall be the best interests of the child.**" The trial court went on to note that the criteria for determining the best interests of the child in the case of a petition for adoption has never been articulated by the legislature "except for broad considerations expressed in [La.Ch.Code art.] 1208." Specifically addressing the burden of proof, and referencing *In re J.M.P.*, 528 So.2d 1002 (La.1988), the trial court noted that "it put the burden of proof on the person proposing to get the adoption to convince the court that it was, in fact, [in] the best interest of the child."

In *In re J.M.P.*, 528 So.2d 1002, 1012 (La. 1988) (emphasis added), our supreme court stated as follows:

> **The statute does not allocate the burdens of proof with respect to the best interest of the child.** But in our opinion both the burden of producing evidence and the burden of persuasion should be on the adoptive parents. The facts with regard to the crucial issue of the nature of the child's relationship with the adoptive parents lie peculiarly within their knowledge. Additionally, they are more apt to be able to produce expert witness testimony helpful to the court in deciding what is in the child's physical and emotional best interests. *See* McCormick, On Evidence, § 337, at 950 (3rd ed.1984).

DCFS argues that the standard of proof should be clear and convincing. DCFS maintains that the trial court's determination that it was in the best interest of M.L.D. to be adopted by Tracey Diboll and Derek Diboll was solely speculative. The State relies on *Santosky v. Kramer*, 455 U.S. 745, 756, 102 S.Ct. 1388, 1396 (1982) (citations omitted), in which the United States Supreme Court stated: This Court has mandated an intermediate standard of proof - "clear and convincing evidence" - when the individual interests at stake in a state proceeding are both "particularly important" and "more substantial than mere loss of money" *Addington v. Texas*, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979).

However, the State's reliance on *Santosky* is misplaced, as *Santosky* involved the State's termination of parental rights. The instant matter is distinguishable from *Santosky*, because here, unlike in *Santosky*, the parental/child relationship had

10

previously been severed; thus, the sole issue to be decided was whether the adoption was in the best interest of the child. In *Santosky*, 455 U.S. at 769-70, (citations omitted) (emphasis added), the Court noted:

> A majority of the States have concluded that a "clear and convincing evidence" standard of proof strikes a fair balance between the rights of the natural parents and the State's legitimate concerns [in state termination proceedings]. We hold that such a standard adequately conveys to the factfinder the level of subjective certainty about his factual conclusions necessary to satisfy due process. **We further hold that determination of the precise burden equal to or greater than that standard is a matter of state law properly left to state legislatures and state courts**.

Here, the record reflects that in making its ruling, the trial court concluded:

> This Court has to decide what is in the best interest of [M.L.D.] while understanding the effects it would have on [G.L.D.] and [M.L.D.'s] relationship for years to come. This Court understands that siblings separation should be of last resort. However, there are times and situations where separation by adoption must be allowed if it is in the best interest of the adoptive child. . . . Dr. Bouillion's testimony concerned this Court when he testified that G.L.D. needs future treatment for an extended period of time[.]
>
> . . . .
>
> This Court further notes that prior to trial, the DIBOLLS attempted to amend their PETITION OF ADOPTION to include [G.L.D.] but DCFS forcefully objected to this untimely amendment. The DIBOLLS were wiling [sic] to have this Court consider their adoption of [G.L.D.] in order to keep these siblings together. This Court denied the untimely amended petition limiting this adoption proceeding to only include [M.L.D.].

Based upon our review of the record and the pertinent facts presented, we cannot say that the trial court erred in finding that it was in the best interest of M.L.D. to be adopted by Tracey Diboll and Derek Diboll based upon a preponderance of the evidence, as the burden of proof with respect to the best interest of the child is neither statutorily nor jurisprudentially mandated. The trial court's ruling is reasonably supported by the record. The record reflects that the trial court considered, among other things, the positive effects on M.L.D. of being adopted by the Dibolls, with

whom she had established a close relationship, versus the negative impact of remaining in the foster care system indefinitely due to G.L.D.'s behavioral issues, which will possibly never be improved. It is also noteworthy that Tracey Diboll and Derek Diboll: (1) attempted to amend their petition to include G.L.D. in the adoption, and that DCFS objected; (2) expressed a willingness to continue visitation between the siblings after the adoption; and (3) expressed a desire to possibly adopt G.L.D. in the future once he receives the appropriate medical attention he needs to improve and/or resolve his behavioral issues. As such, the trial court's ruling, based on a preponderance of the evidence, is reasonable and is not solely speculative. Accordingly, we find no merit to these assignments of error based upon the nature of the immediately preceding discussion.

## ASSIGNMENTS OF ERROR FIVE AND SIX:

We will address assignments of error five and six together as they assert that the trial court erred in granting the adoption of M.L.D. by Tracey Diboll and Derek Diboll without the consent of DCFS, the custodian of the child, and without a finding that DCFS was being unreasonable in withholding its consent to the adoption. We find no merit to these contentions.

Louisiana Children's Code art. 1193 (emphasis added) states, in pertinent part:

> **Unless** rights have been terminated in accordance with Title X or XI, consent to the adoption of a child or relinquishment of parental rights shall be required of the following:
>
> . . . .
>
> (5) The custodial agency which has placed the child for adoption, except that the court may grant the adoption without the consent of the agency if the adoption is in the best interest of the child and there is a finding that the agency has unreasonably withheld its consent.

DCFS argues that its consent to the adoption of a child is required as the custodial agency of the child unless the court finds that: (1) the adoption is in the

12

best interest of the child **and** (2) the agency is being unreasonable in withholding its consent. DCFS maintains that this is a statutorily mandated two-part finding.

Having found that it was in M.L.D.'s best interest to be adopted by Tracey Diboll and Derek Diboll for the reasons stated herein, the trial court then considered whether DCFS was being unreasonable in witholding its consent. The evidence in this case consists of: (1) testimony of the witnesses; (2) testimony of experts; (3) documents, medical records, statements of the parties; and (4) other information which has been admitted into evidence. The trial court was aware of the physical and mental ramifications of approving or disproving the adoption and its effect on G.L.D. and M.L.D. in the years to come. The trial court discussed the adoptive parents' love for both children, G.L.D.'s behavioral problems that led to his repeated hospitalizations, and M.L.D.'s desire to be adopted with or without G.L.D. The trial court also discussed the State's witnesses and evidence that suggested it was in M.L.D.'s best interest to remain as a sibling group with G.L.D., and the potentially devastating effects the adoption would have on G.L.D., but neither relied on it nor found that most of G.L.D.'s episodes of flashing out and assaultive behavior were caused by either the adoptive parents or by way of the adoption proceedings. While the record reveals that the trial court was concerned with how G.L.D.'s cognitive impairment could indefinitely delay M.L.D.'s ability to have permanency in her life, its reasons for ruling that DCFS was unreasonable in withholding its consent to the adoption are more general insfoar as the trial court found, based upon the testimony and evidence presented:

> This Court is not convinced by DCFS's and[G.L.D.'s position that all of G.D.L.'s mental issues rest solely on the threatened adoption of M.D.L. by the Dibolls. . . .This Court further notes that prior to trial, the DIBOLLS attempted to amend their PETITION OF ADOPTION to include [G.L.D.] but DCFS forcefully objected to this untimely amendment. The DIBOLLS were wiling [sic] to have this Court

13

consider their adoption of [G.L.D.] in order to keep these siblings together[.]

Under the manifest error rule mandated by the Louisiana Supreme Court in *Rosell*, 549 So.2d at 844, we "may not set aside a trial court's . . . finding of fact in the absence of 'manifest error' or unless it is 'clearly wrong[.]'" Although we sympathize with G.L.D., as some considerations weigh in favor of keeping the siblings together, the facts of this particular case convince us that the combination of factors are overwhelmingly in favor of the adoptive parents and that the adoption is in the best interest of M.L.D. and that DCFS was unreasonable in withholding its consent. As such, we find no error in the trial court's ruling. Accordingly, we affirm the trial court's ruling on these issues.

## ASSIGNMENT OF ERROR NUMBER SEVEN:

In DCFS's seventh assignment of error, DCFS contends that the trial court erred in casting the costs of the proceedings and the court ordered evaluation against the State.

Louisiana Revised Statutes 13:5112(A) (emphasis added) provides, in pertinent part:

> In any suit against the state or any department, board, commission, agency, or political subdivision thereof, **the trial or appellate court**, after taking into account any equitable considerations as it would under Article 1920 or Article 2164 of the Code of Civil Procedure, as applicable, may grant in favor of the successful party and against the state, department, board, commission, agency, or political subdivision against which judgment is rendered, an award of such successful party's court costs under [La.R.S.] 13:4533 and other applicable law as the court deems proper but, if awarded, **shall express such costs in a dollar amount in a judgment of the trial court or decree of the appellate court**.

DCFS argues that the trial court erred in casting the costs of the proceeding to the State. Had no opposition been filed, Tracey Diboll and Derek Diboll would have been responsible for paying the court costs related to the adoption. Our review of

14

the record, however, suggests that the trial court did not exceed its discretion in ordering costs against the State. The costs of this court are $871.00. Accordingly, we affirm the trial court's ruling on this issue.

**G.L.D.'S ASSIGNMENTS OF ERROR**

1.   The trial court erred when it applied the preponderance of the evidence standard because First and Fourteenth Amendment rights were in jeopardy, and the standard of proof should have been clear and convincing.

2.   The trial court erred in not making a ruling as to whether DCFS had unreasonably withheld its consent to the adoption.

3.   The trial court erred in ignoring the testimony and findings of the court appointed expert, along with the testimony of all other experts and behavioral healthcare providers, and in finding the adoption was in M.L.D.'s best interest.

**ASSIGNMENT OF ERROR NUMBER ONE:**

In his first assignment of error, G.L.D. contends that the trial court erred when it applied the preponderance of the evidence standard because First and Fourteenth Amendment rights were in jeopardy, and the standard of proof should have been clear and convincing. We find no merit to this contention.

As discussed in DCFS's assignments of error three and four, in *In re J.M.P.*, 528 So.2d at 1012, (emphasis added), our supreme court stated:

> The statute **does not** allocate the burdens of proof with respect to the best interest of the child. But in our opinion both the burden of producing evidence and the burden of persuasion should be on the adoptive parents. The facts with regard to the crucial issue of the nature of the child's relationship with the adoptive parents lie peculiarly within their knowledge. Additionally, they are more apt to be able to produce expert witness testimony helpful to the court in deciding what is in the child's physical and emotional best interests. *See* McCormick, On Evidence, § 337, at 950 (3rd ed.1984).

To determine whether the grant or denial of a petition for adoption is warranted, the **paramount** consideration is the best interest of the child. *Leger*, 714 So.2d 770 (emphasis added).

15

G.L.D. argues that the protection of constitutional rights requires a higher standard of proof. Based upon our review of the testimony and documentary evidence, we find that the trial court's ruling that it was in M.L.D.'s best interest to be adopted by Tracey Diboll and Derek Diboll, based upon a preponderance of the evidence, was reasonable. As such, no higher standard of proof is required. Accordingly, we affirm the trial court's ruling on this issue.

**ASSIGNMENT OF ERROR NUMBER TWO:**

In his second assignment of error, G.L.D. contends that the trial court erred in not making a ruling as to whether DCFS had unreasonably withheld its consent to the adoption. We find no merit to this contention.

As discussed in DCFS's assignments of error five and six, La.Ch.Code art. 1193 (emphasis added) states, in pertinent part:

> Unless rights have been terminated in accordance with Title X or XI, consent to the adoption of a child or relinquishment of parental rights shall be required of the following:
>
> . . . .
>
> (5) The custodial agency which has placed the child for adoption, except that the court may grant the adoption without the consent of the agency if the adoption is in the best interest of the child and there is a finding that the agency has unreasonably withheld its consent.

Moreover, under the manifest error rule mandated by the Louisiana Supreme Court in *Rosell*, 549 So.2d at 844:

> [A]court of appeal may not set aside a trial court's . . . finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.

G.L.D. argues that the trial court did not make a ruling as to whether DCFS had unreasonably withheld its consent to the adoption. Based on the record as a whole, the trial court's ruling that it was in the best interest of M.L.D. to be adopted

16

by Tracey Diboll and Derek Diboll, without DCFS's consent was reasonable.  As such, for the reasons discussed herein, DCFS unreasonably withheld its consent to the adoption.   Accordingly, we affirm the trial court's ruling on this issue.

**ASSIGNMENT OF ERROR NUMBER THREE:**

In his third assignment of error, G.L.D. contends that the trial court erred in ignoring testimony and findings of the court-appointed expert, along with the testimony of all other experts and behavioral healthcare providers, and in finding that the adoption was in M.L.D.'s best interest.  We find no merit to this contention.

To determine whether the grant or denial of a petition for adoption is warranted, the paramount consideration is the best interest of the child.  *Leger*, 714 So.2d 770.

G.L.D. argues that procedurally when the trial court determined that the adoption was to be part of the CINC proceedings, both children, and their individual interests, became the subject of the trial.   However, as discussed in DCFS's assignments of error number three and four, the Dibolls attempted to amend their Petition for Adoption to include G.L.D., but DCFS forecfully objected to the untimely amendment, and the trial court denied the untimely amended petition limiting this adoption proceeding to M.L.D.  As such, the trial court had to decide what was in the best interest of M.L.D. while understanding the effects it would have on G.L.D. and M.L.D.'s relationship in the years to come.

The record reveals that prior to making its ruling, the trial court exercised great patience in hearing:  (1) testimony of witnesses; (2) testimony of experts; (3) reviewing documents, medical records, statements of the parties; and (4) other information admitted into evidence over a span of eight days.  As such, we find that after consideration of all relevant evidence, there was a reasonable factual basis for the finding in the trial court that it was in the best interest of M.L.D. to be adopted

17

by Tracey Diboll and Derek Diboll.  Accordingly, we affirm the trial court's ruling on this issue.

**CONCLUSION**

The Department of Children and Family Services asserts seven assignments of error:  (1) the trial court erred in denying DCFS's Motion for Involuntary Dismissal of the Petition; (2) the trial court erred in finding that it was in M.L.D.'s best interest to be adopted by Tracey Diboll and Derek Diboll; (3) the trial court erred in basing the best interest finding on a preponderance of the evidence; (4) the trial court erred in basing the best interest finding on speculation; (5) the trial court erred in granting the adoption of M.L.D. by Tracey Diboll and Derek Diboll without the consent of DCFS, the custodian of the child; (6) the trial court erred in granting the adoption of M.L.D. by Tracey Diboll and Derek Diboll without a finding that DCFS was being unreasonable in withholding its consent to the adoption; and (7) the trial court erred in casting the costs of the proceedings and the court ordered evaluation against the State.  Finding no merit to the Department of Children and Family Services' seven assignments of error, we affirm the trial court's rulings on these issues.

G.L.D. asserts three assignments of error:  (1) the trial court erred when it applied the preponderance of the evidence standard because First and Fourteenth Amendment rights were in jeopardy, and the standard of proof should have been clear and convincing; (2) the trial court erred in not making a ruling as to whether DCFS had unreasonably withheld its consent to the adoption; and (3) the trial court erred in ignoring the testimony and findings of the court-appointed expert, along with the testimony of all other experts and behavioral healthcare providers, and in finding the adoption was in M.L.D.'s best interest.  M.L.D. also filed a brief, incorrectly labeled as an appellee brief, and joined in those arguments and prayers

18

for relief stated by DCFS and G.L.D.  Finding no merit to G.L.D.'s three assignments of error, we affirm the trial court's rulings on these issues.

Costs of these proceedings in the amount of $871.00 are assessed to the State.

**AFFIRMED.**